FEDERAL ARMORED SERVICE, INC v PUBLIC SERVICE
COMMISSION

Docket No. 144145. Submitted December 22, 1993, at Lansing. Decided March 7, 1994, at 9:05 A.M.

Federal Armored Service, Inc., filed a protest with the Public Service Commission against an application by Wolverine Dispatch, Inc., for an extension of Wolverine's authority under the Motor Carrier Act. Wolverine sought authorization to provide Old Kent Financial Corporation intrastate transportation of Old Kent documents and materials. Federal had been authorized to provide those services to Old Kent before Wolverine's application. Following a hearing before a referee and pursuant to the recommendation of the referee, the commission granted Wolverine's application. Federal appealed as of right in the Court of Appeals.

The Court of Appeals *held:*

1. The hearing referee, in determining whether Wolverine was financially fit to provide the proposed service, did not err in taking judicial notice of Wolverine financial reports already on file with the commission. Such judicial notice is authorized under the Administrative Procedures Act, MCL 24.277; MSA 3.560(177), and Federal could have inspected the reports and disputed their accuracy had it chosen to do so.

2. There was competent, material, and substantial evidence in support of the determination, pursuant to MCL 476.5(1)(b); MSA 22.538(1)(b) and MCL 475.1(p); MSA 22.531(p), that Wolverine was financially fit to provide the proposed service.

3. There was competent, material, and substantial evidence in support of the determination, pursuant to MCL 476.5(1)(c); MSA 22.538(1)(c) and MCL 475.1(o); MSA 22.531(o), that the proposed service would serve a useful public purpose and that, consistent with the legislative intent expressed in MCL 475.2; MSA 22.532, the proposed service would satisfy a demonstrated public need.

Affirmed.

REFERENCES

Am Jur 2d, Administrative Law §§ 384-388; Evidence §§ 39-43, 51.

See ALR Index under Administrative Law; Carriers; Judicial Notice; Public Service Commissions.

ADMINISTRATIVE LAW — JUDICIAL NOTICE — PUBLIC SERVICE COMMISSION — MOTOR CARRIERS — FINANCIAL FITNESS.

> A Public Service Commission referee hearing a motor carrier's application for authority to provide a proposed service, may take judicial notice of the carrier's financial reports that are already on file with the commission when determining whether the carrier is financially fit to provide the proposed service (MCL 24.277, 475.1[p], 476.5[1][b]; MSA 3.560[177], 22.531[p], 22.538[1][b]).

*Schenk, Boncher & Prasher* (by *Gregory G. Prasher*), for Federal Armored Service, Inc.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Don L. Keskey* and *Richard M. Karoub,* Assistant Attorneys General, for the Public Service Commission.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *Karl L. Gotting* and *Frances W. Hamermesh*), for Wolverine Dispatch, Inc.

Before: SHEPHERD, P.J., and McDONALD and JANSEN, JJ.

SHEPHERD, P.J. Federal Armored Service, Inc., appeals as of right from a July 1, 1991, opinion and order of the Public Service Commission granting Wolverine Dispatch, Inc., authority to transport materials pursuant to the Motor Carrier Act, MCL 475.1 *et seq.*; MSA 22.531 *et seq.* We affirm.

Wolverine is in the business of providing armored car and check courier services. Wolverine had provided some transportation services to Old Kent Financial Corporation in the past, when, on April 6, 1990, Wolverine filed an application with the PSC for an extension of authority in order to transport banking materials between various points in Michigan for Old Kent. Federal was

already authorized to transport such materials, and protested Wolverine's application.

On September 18, 1990, a hearing was held in the matter before a hearing referee. Wolverine presented two witnesses. Federal did not present any witnesses.

At the hearing, the president of Wolverine, Christopher Armstrong, testified that the company had a number of armored vehicles and four small cars for courier work. Armstrong testified that the company could provide courier service to meet Old Kent's needs, albeit with the addition of some equipment. Armstrong testified that Wolverine had the financial ability to purchase the equipment because it was operating at a profit, and had utilized only a portion of a $500,000 line of credit with Michigan National Bank. Armstrong provided additional financial information concerning Wolverine's income, expenses, liabilities, and assets. As further evidence of Wolverine's financial situation, the hearing referee took judicial notice of the annual reports Wolverine had filed with the PSC.

Old Kent's float management officer, Katherine McDonald, testified that Old Kent needed the transportation services described in Wolverine's application. McDonald testified that if Wolverine's application were granted, Old Kent would solicit bids from both Wolverine and Federal for its transportation needs. McDonald testified that if Wolverine's application were granted it would be helpful to Old Kent because Old Kent would have a choice between providers in areas where there were service problems.

On December 12, 1990, the hearing referee issued his proposal for decision, recommending to the PSC that it grant Wolverine's application for authority. Federal filed exceptions to the proposed

decision. However, on July 1, 1991, the PSC issued its opinion and order granting Wolverine's application for motor carrier authority as recommended by the hearing referee.

Federal initially filed an appeal from the decision of the PSC in the Ingham Circuit Court. However, pursuant to a stipulation of the parties, the matter was transferred to this Court. MCL 462.26(3); MSA 22.45(3). Herein, Federal appeals as of right from the decision of the PSC.

On appeal from a decision of the PSC, an appellant must show by clear and satisfactory evidence that the PSC's decision is unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8); *Midland Cogeneration Venture v Public Service Comm,* 199 Mich App 286, 313; 501 NW2d 573 (1993). A decision of the PSC is unlawful when it involves an erroneous interpretation or application of the law, and unreasonable when it is unsupported by the evidence. *Id.* Any factual determinations of the PSC must be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28.

I

First, Federal argues that it was improper for the hearing referee to take judicial notice of Wolverine's financial reports that were on file with the PSC. We find that judicial notice was properly taken.

MCL 24.277; MSA 3.560(177) allows an agency such as the PSC to take judicial notice of certain facts within its knowledge:

An agency in a contested case may take official notice of judicially cognizable facts, and may take notice of general, technical or scientific facts

within the agency's specialized knowledge. The agency shall notify parties at the earliest practicable time of any noticed fact which pertains to a material disputed issue which is being adjudicated, and on timely request the parties shall be given an opportunity before final decision to dispute the fact or its materiality. An agency may use its experience, technical competence and specialized knowledge in the evaluation of evidence presented to it.

In *Attorney General v Public Service Comm,* 136 Mich App 52, 57; 355 NW2d 640 (1984), this Court held that the psc could take judicial notice of facts contained within a report in the possession of the psc where the report was available for inspection and the appellant did not dispute the accuracy or materiality of the information.

Similarly, in *Ishpeming v Public Service Comm,* 370 Mich 293, 314; 121 NW2d 462 (1963), our Supreme Court concluded that the appellant was not prejudiced by the failure to introduce into evidence official reports already within the possession of the commission. Again, the principal facts were that the appellant had access to the information and did not dispute the accuracy of the information. Therein, the appellant simply argued that the psc had no legal right to take judicial notice of the reports. The Supreme Court disagreed with the appellant's arguments. *Id.*

In the present case, as in *Attorney General, supra,* and *Ishpeming, supra,* Federal does not contest the accuracy of the information that was judicially noticed by the psc. Rather, Federal argues that the psc could not judicially notice the reports. However, we find that this case clearly comes within the scope of MCL 24.277; MSA 3.560(177), which permits judicial notice.

In a separate issue, Federal argues that the psc

did not follow the proper procedure for taking judicial notice under MCL 24.277; MSA 3.560(177) because Federal was never given an opportunity to dispute the information. However, our review of the record reveals no objection by Federal with respect to the accuracy or materiality of the information. Thus, there was no procedural irregularity, and Federal was not prejudiced by judicial notice of the reports. *Attorney General, supra* at 57; *Ishpeming, supra* at 314.

Next, Federal argues that Wolverine did not present sufficient evidence of financial fitness to support its application. However, we disagree.

The Motor Carrier Act requires the commission to issue a certificate of authority to a common carrier if it finds, inter alia, that the applicant is "fit, willing, and able to provide the transportation to be authorized by the certificate." MCL 476.5(1) (b); MSA 22.538(1)(b). "Fit" is defined in the statute as meaning "safe, suitable, and financially responsible as determined by the commission." MCL 475.1(p); MSA 22.531(p).

In the case at bar, Federal's argument is limited to Wolverine's financial fitness. However, even if we do not consider the reports that were judicially noticed, we agree with the conclusion of the commission that there was sufficient evidence of financial fitness. In particular, there was testimony that Wolverine had an established motor carrier fleet of over forty vehicles. Although Wolverine expected that it would be necessary to purchase additional courier vehicles, it was undisputed that Wolverine had a credit line of $500,000 with a local bank— less than $200,000 of which was in use. Wolverine had gross annual revenues in excess of $2 million, and was operating at a profit. Thus, there was competent, material, and substantial evidence of Wolverine's financial fitness. Const 1963, art 6,

§ 28. We will not disturb the findings of the commission in this regard. *Midland, supra* at 313.

## II

Federal also argues that Wolverine failed to demonstrate that its proposed service would serve a useful public purpose. However, we agree with the conclusion of the commission that Wolverine's proposed service would in fact serve a useful public purpose.

The portion of the Motor Carrier Act relevant to this issue is MCL 476.5(1)(c); MSA 22.538(1)(c), which provides:

> (1) Except as provided in this section, the commission shall issue a certificate of authority to an applicant authorizing that it provide transportation subject to the jurisdiction of the commission under this article as a motor common carrier of property if the commission finds all of the following:
>
> * * *
>
> (c) On the basis of evidence presented, that the service proposed will serve a useful public purpose, unless the commission finds, on the basis of the evidence presented by a protestant objecting to the issuance of a certificate that the transportation to be authorized by the certificate would create excess service by endangering the ability of the present carriers to provide adequate, economical, safe, and efficient service.

Following the satisfaction of the criteria set forth in MCL 476.5(1); MSA 22.538(1), the PSC "shall issue" a certificate of authority. Under subsection c, the PSC must find that "the service proposed will serve a useful public purpose." It is with this finding that Federal takes issue.

The term "useful public purpose" is defined

under the Motor Carrier Act, MCL 475.1(o); MSA 22.531(o), as follows:

> "Useful public purpose" means a purpose for which an applicant can provide adequate, economic, safe, effective, competitive, and equitable motor carrier service to satisfy a demonstrated public need, without creating excess service.

Although the term "demonstrated public need" is not defined in the statute, its meaning can be gleaned from the Legislature's statement of the purpose of the Motor Carrier Act in MCL 475.2; MSA 22.532:

> It is hereby declared to be the purpose and policy of the legislature in enacting this law to confer upon the commission the power and authority and to make it its duty to supervise and regulate the transportation of property by motor vehicle for hire upon and over the public highways of this state in all matters whether specifically mentioned herein or not, so as to: . . . . (c) promote competitive and efficient transportation services; (d) meet the needs of motor carriers, shippers, receivers, and consumers; (e) allow a variety of quality, price, and service options to meet changing market demands and the diverse requirements of the shipping public; . . . .

Applying these statutory provisions to the case at bar, we are convinced that Wolverine provided ample evidence that its proposed service would "serve a useful public purpose." MCL 476.5(1)(c); MSA 22.538(1)(c). Wolverine's president attested to the company's history of providing armored car service. The manager from Old Kent testified that she was very satisfied with Wolverine's service in the past. Because Old Kent had experienced some difficulties with Federal's service, it welcomed the

prospect of having a choice between providers. Old Kent's manager indicated a strong possibility of contracting with Wolverine for at least a portion of its courier transportation needs if Wolverine's prices were competitive.

On the basis of the foregoing, there was evidence of a "demonstrated public need" in the form of Kent's desire to have an option between providers. MCL 475.1(o); MSA 22.531(o). Wolverine's prior satisfactory performance for Old Kent established that it could provide "adequate, economic, safe, effective, competitive, and equitable motor carrier service." MCL 475.1(o); MSA 22.531(o). Accordingly, there was evidence that Wolverine's proposal would serve a useful public purpose. MCL 476.5(1)(c); MSA 22.538(1)(c). Further, the decision to grant Wolverine's application was consistent with three of the stated purposes of the Motor Carrier Act: to promote competition, to meet the needs of shippers and consumers, and to allow a variety of quality, price, and service options. MCL 475.2; MSA 22.532.

Thus, we affirm the decision of the commission as being neither unlawful nor unreasonable. MCL 462.26(8); MSA 22.45(8); *Midland, supra* at 313.

Affirmed.