ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

Docket No. 177465. Submitted November 21, 1995, at Lansing. Decided February 2, 1996, at 9:30 A.M

The Michigan Consolidated Gas Company (Mich Con) filed with the Public Service Commission its 1994 gas cost recovery (GCR) plan that, among other things, sought to implement a trial hedging program, under which it would purchase natural gas futures contracts for the purpose of minimizing its risk in an increasingly volatile natural gas market, and to modify the existing procedure for allocating refunds or surcharges by the creation of a separate GCR factor that would fluctuate monthly to reflect immediately the difference between the estimated cost of natural gas and the actual cost of natural gas. Various interested parties, including the Attorney General, were permitted to intervene in the plan review process. Following an evidentiary hearing, the hearing officer recommended that the PSC adopt the 1994 GCR plan with certain exceptions and modifications. The PSC, agreeing that the volatile natural gas market made hedging in the futures market a desirable means to minimize the effect of price changes, included in the 1994 plan permission to implement a two-year trial hedging program subject to certain conditions to ensure that any gains resulting from the program would be passed on to the customers and any excessive losses would be borne by Mich Con and to assure that there were adequate controls and review of the futures trading. The PSC also included in the 1994 plan permission to replace the historic refund and surcharge procedure with a new procedure whereby any refund or surcharge resulting from the failure to predict accurately the actual cost of gas would be rolled over into the following year's GCR factor. The Attorney General appealed.

The Court of Appeals *held:*

1. The PSC is not prohibited, as a matter of law, from considering the costs associated with the implementation of a hedging program of natural gas futures to be among the booked

REFERENCES

Am Jur 2d, Public Utilities §§ 232, 240.
See ALR Index under Public Service Commissions; Utilities.

costs of the natural gas that is thereafter sold. The determination of the PSC that the hedging program was an appropriate method to deal with the unstable short-term natural gas market cannot be said to be unreasonable, and, thus, that determination is dispositive.

2. MCL 460.6h(13) and (14); MSA 22.13(6h)(13) and (14) gives to the PSC broad discretion in fashioning refund and surcharge procedures. Although those subsections clearly granted the PSC the power to implement the historic procedure for dealing with refunds and surcharges, whereby the refund and surcharge was apportioned in proportion to the actual gas usage of each customer during the period covered, the statute does not require that such a procedure be adopted. Because the PSC found that the relevant customer base had become relatively homogeneous and consistent year to year, and the record supports that finding, it cannot be said that the PSC abused its discretionary power to determine a reasonable refund and surcharge procedure by adopting the roll-over method of allocating any refund or surcharge through the adjustment of the GCR factor in the following year. The new procedure represents a reasonable balancing of the precision of a refund and surcharge procedure against the cost of implementing that procedure.

Affirmed.

1. PUBLIC UTILITIES — GAS COST RECOVERY FACTORS — HEDGING CONTRACTS — BOOKED COSTS.

The Public Service Commission may include the costs associated with the implementation of a hedging program of natural gas futures to be among the booked costs of the natural gas for the purpose of determining the appropriate gas cost recovery factor used to determine the final rate at which that gas is sold (MCL 460.6h[1][b]; MSA 22.13[6h][1][b]).

2. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — REFUND AND SURCHARGE PROCEDURES.

The Public Service Commission is vested with broad discretion in determining a reasonable and appropriate procedure by which to allocate among natural gas customers any refund or surcharge resulting from the failure to predict accurately the gas cost recovery factor necessary to reflect actual gas prices; the commission in determining a procedure to allocate any refund or surcharge may balance the relative precision of a particular procedure against the cost of implementing that procedure (MCL 460.6h[13],[14]; MSA 22.13[6h][13],[14]).

*Frank J. Kelley,* Attorney General, *Thomas L.*

*Casey,* Solicitor General, and *Donald E. Erickson* and *Orjiakor N. Isiougu,* Assistant Attorneys General, for the Attorney General.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Don L. Keskey* and *Patricia S. Barone,* Assistant Attorneys General, for the Public Service Commission.

*Foster, Swift, Collins & Smith, P.C.* (by *William K. Fahey* and *Stephen J. Rhodes*), for the Michigan Consolidated Gas Company.

Before: MARKMAN, P.J., and CORRIGAN and J. D. PAYANT,* JJ.

PER CURIAM. The Attorney General appeals portions of a June 30, 1995, order of the Michigan Public Service Commission, which allows Michigan Consolidated Gas Company (Mich Con) to include gains and losses it may incur from hedging in the gas futures market in its gas cost recovery (GCR) factors and which changes the method by which Mich Con credits or surcharges customers for the difference between the actual cost of gas and its projected cost as embodied in the GCR factors. We affirm.

I

MCL 460.6h(1)(b); MSA 22.13(6h)(1)(b) created a mechanism whereby the PSC may include a "gas cost recovery clause" in the rates or rate schedule of a gas utility. Such a clause permits the monthly adjustment of rates for gas in order to allow the utility to recover the booked costs of gas sold by the utility as long as the utility incurs such costs

---

* Circuit judge, sitting on the Court of Appeals by assignment.

under "reasonable and prudent" policies and practices. Gas utilities must file annual GCR plans describing the expected sources and volumes of the utilities' gas supply, the changes in the cost of gas anticipated for the following year, and a five-year forecast of gas requirements, sources of supply, and cost projections. The PSC conducts a review and either approves, rejects, or amends the annual GCR plan and five-year forecast. The statute also requires the PSC to commence a reconciliation proceeding not less than once a year and not later than three months after the end of each twelve-month period covered by a gas utility GCR plan, during which proceeding the PSC reconciles the revenues received against the allowances for costs. The PSC must require a gas utility to refund to customers or credit against their bills any net overcharge because of the GCR clause and must authorize the recovery of any undercharge.

On July 19, 1993, Mich Con sought PSC approval of its 1994 GCR plan. Among other things, Mich Con requested permission to implement a two-year trial "hedging program," under which Mich Con would trade natural gas futures contracts and "hedge" them, i.e., Mich Con would lock in the then-current futures price as a substitute for the actual spot market price at the time of delivery. Mich Con also requested modification of its existing refunding procedures.

The hearing officer granted intervenor status to a number of parties, including the Attorney General. On April 8, 1994, the hearing officer issued his proposal for decision, recommending that the PSC adopt Mich Con's GCR plan with certain exceptions and modifications. In particular, the hearing officer recommended that Mich Con be permitted to implement both its hedging program as modi-

fied by the PSC staff and its proposed refunding and surcharging system as modified.

Exceptions were filed to the proposal for decision by Mich Con, the Attorney General, the PSC staff, and others. In an opinion and order dated June 30, 1994, the PSC held that a two-year trial hedging program should be allowed subject to modifications proposed by the PSC staff: all gains realized in futures trading should be shared with ratepayers, while losses in excess of $4 million should be borne solely by Mich Con; Mich Con's board of directors must adopt a written trading strategy and provide written policies and procedures before trading begins; and Mich Con must provide the PSC with a copy of its monthly futures trading report in addition to the information provided annually during the GCR reconciliation phase. The PSC agreed with Mich Con's position that its natural gas prices had become increasingly volatile, thereby subjecting it to the risk that its prices would be higher than anticipated, and that other mechanisms were not sufficient to solve this problem. It also agreed that Mich Con's proposed program constituted genuine hedging, not speculation, in that Mich Con was not trying to "beat the market" but only to improve its position in light of its portfolio of gas contracts. The PSC concluded:

> Based on the foregoing discussion, the Commission finds that Mich Con should be allowed to implement a trial hedging program, as modified by Mr. Ballinger, for 1994-95. The Commission is persuaded that Mr. Ballinger's proposal includes sufficient safeguards to protect customers. Furthermore, if the Commission finds that a position the company has taken is for speculation, it can simply disallow inclusion in the company's cost of gas of any losses and costs associated with that position. Nevertheless, by implementing a trial hedg-

ing program, Mich Con can gain experience and gather information to aid the Commission in determining whether hedging or other financial risk management tools, should be used to manage energy costs. At the end of the trial period, the Commission will evaluate the program to determine if it should be continued. The Commission may also terminate the program at any time, if the circumstances warrant that action.

As to Mich Con's modification of Mr. Ballinger's proposal, i.e., the symmetrical sharing of gains and losses, the Commission finds that it should be rejected. Mich Con has a statutory duty under Act 304 to engage in reasonable and prudent policies and practices. As a safeguard to its customers, it must accept a smaller part of the gains and a larger part of the losses, at least during the trial period.

The PSC also agreed that Mich Con could alter its refunding system. Mich Con had previously used an "historical" refunding system under which it refunded or surcharged customers on the basis of their actual historical consumption. In place of the historical system, Mich Con proposed refunding and surcharging on the basis of a separate GCR factor that would allow a monthly fluctuation in the cost of gas to customers to reflect immediately recognized disparities between the estimated cost of gas and the actual cost of gas. Mich Con argued that such a system of refunding would be sufficiently accurate because customers subject to refunds and surcharges have become more homogeneous over time. Mich Con argued that because of this homogeneity and because the customer base tends to be stable over time, the substantial costs of the historical refund system outweighed its benefits. Although conceding that the historical refunding method is probably more precise than the proposed refunding method, Mich Con esti-

mated that the cost of compiling and analyzing the data necessary to make accurate customer-by-customer refunds or surcharges is $600,000 annually. The PSC staff agreed with Mich Con that the cost of the historical method now outweighed its benefits. However, instead of the month-by-month adjustments proposed by Mich Con, the staff recommended that any net annual overcharge or undercharge be "rolled over" into the next year's GCR reconciliation. The PSC summarized the hearing officer's reasons for accepting the modified proposal as follows:

> The ALJ [administrative law judge] agreed with the Staff's analysis, finding that the advantages of a prospective, or roll-in methodology, outweigh the disadvantages and that it is a reasonable response to the emergence of a homogenous mix of GCR customers. Noting that Mich Con and the Staff agreed that the avoidable costs of the prospective system, i.e., $600,000, will be realized by customers in the next rate order, the ALJ rejected the argument that customers are already paying for the cost of the historical refunding system and therefore it should not be changed. The ALJ found that the avoidable costs are significant when compared with the average amount of the refund per customer. As a result, the ALJ concluded that public policy dictates that if the prospective refunding system is less costly and more efficient, but reasonably achieves the same accuracy as the historical refunding system, it should be approved.
>
> The ALJ also rejected the AG's interpretation of refund under Act 304. Rather, relying on Section 6h, the ALJ concluded that Act 304 provides the Commission with the authority to establish a refund procedure. In contrast, the ALJ found that Mich Con's definition of refund in the context of Act 304, i.e., that the utility should not retain the amount for refund and it should be paid out to its customers, is consistent with the statute.

The ALJ further rejected the AG's proposed modifications to the Staff's methodology. The ALJ found that, because the prospective refunding system requires adjustments to the cost of gas in the GCR reconciliation, sufficient safeguards will prevent Mich Con from recovering a cost of gas in excess of that approved by the Commission. The ALJ also found it unnecessary to track over- or under-recoveries of gas costs by rate class because the percentage of monthly GCR consumption demonstrates the homogeneity of Mich Con's customers.

The PSC agreed with the hearing officer and stated further:

[C]ontrary to the Attorney General's position, there is no statutory presumption favoring the current historical refunding system.

In light of this statutory authority, the ALJ properly analyzed this issue and, therefore, the commission adopts his findings. In particular, the record supports the conclusion that the benefits of the current historical refunding system have been greatly reduced over the past several years, while the cost to administer it is significant. Furthermore, the current system is not as accurate as the Attorney General and the RRC [Residential Ratepayer Consortium] suppose. As the Staff correctly points out, a utility is never able to return to each customer the exact amount of that customer's proportionate share of a refund. On the other hand, the record indicates that the Staff's methodology will be less costly and more efficient, while achieving a reasonable level of accuracy. Therefore, the Commission finds that Mich Con should implement the Staff's refunding methodology effective immediately.

From these decisions, the Attorney General appeals as of right.

II

A party aggrieved by a decision of the PSC must show by clear and satisfactory evidence that the PSC's decision is unlawful or unreasonable. A decision is "unlawful" when it involves an erroneous interpretation or application of the law, and "unreasonable" when it is unsupported by the evidence. Any factual determinations of the PSC must be supported by competent, material, and substantial evidence on the whole record. *Federal Armored Service v Public Service Comm,* 204 Mich App 24, 27; 514 NW2d 178 (1994). The courts are required to give due deference to the PSC's administrative expertise and may not substitute their judgment for that of the PSC. They should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with its enforcement.

A

MCL 460.6h(1)(b); MSA 22.13(6h)(1)(b) provides:

"Gas cost recovery clause" means an adjustment clause in the rates or rate schedule of a gas utility which permits the monthly adjustment of rates for gas in order to allow the utility to recover the booked costs of gas sold by the utility if incurred under reasonable and prudent policies and practices.

The Attorney General argues that the PSC's allowance of hedging gains or losses is unlawful because such gains and losses cannot be considered among the "booked costs of gas sold." Although the Attorney General concedes that any gain or loss on futures contract hedging would indirectly reduce or increase Mich Con's cost of gas sold, he argues

that the results of trading in futures contracts have nothing to do with the actual delivery of gas to Mich Con customers. The Attorney General therefore concludes that such costs · are not a "cost" of the gas actually being sold to customers.

We decline the Attorney General's invitation to hold as a matter of law that the costs associated with the hedging program cannot be among the booked "costs" of gas sold under the statute. A Mich Con witness testified that standard accounting principles or standards require that a net gain or loss on a futures contract be recorded as a "cost" of the gas purchased pursuant to the contract. Moreover, this Court has held that the PSC properly allowed a utility to recover as a "cost" of gas in GCR proceedings a payment made as part of a settlement of a case before the Federal Energy Regulatory Commission. *Michigan Gas Utilities v Public Service Comm,* 200 Mich App 576, 584; 505 NW2d 27 (1993). This Court has also upheld the PSC's allowance of payments made by a utility to a supplier pursuant to a take-or-pay arrangement whereby the utility was required to pay for a minimum amount of gas even if the actual amount of gas requested and delivered was less. *Attorney General v Public Service Comm No 1,* 171 Mich App 696, 699; 431 NW2d 47 (1988). In doing so, this Court refused to second-guess the PSC's decision on how best to account for certain costs. *Id.* at 698. We find that the instant case similarly involves a dispute about how certain costs should be accounted for, and we refuse to hold as a matter of law that the PSC may not consider costs associated with hedging to be among the booked "costs" of gas sold.

In the alternative, the Attorney General argues that it is "unreasonable" for the PSC to allow hedging gains and losses to be included in Mich

Con's calculation of its cost of gas sold.[1] The Attorney General argues, in particular, that hedging against the market-sensitive portion of Mich Con's gas supply portfolio, which consists of both long-term fixed price contracts and short-term contracts tied to the spot market or other market indices, is unreasonable. He argues that including market-sensitive contracts as part of a total gas supply portfolio is both "reasonable and prudent" and concludes that using hedging in the futures market to offset market-sensitive contracts is therefore unreasonable. That hedging is an indirect cost does not render it any less real a cost.

We also find that the PSC's decision is not "unreasonable." Although the Attorney General and other parties sponsored testimony critical of the hedging program, Mich Con and the PSC staff sponsored testimony to the contrary. The Attorney General has not shown such testimony to be wholly irrational or otherwise unworthy of credence. Under this Court's limited standard of review, the existence of any evidence supporting the PSC's decision is dispositive. We reject the Attorney General's contention that the PSC's decision to allow hedging is "unreasonable" because it defeats the purpose of including both long-term and market-sensitive contracts in a gas supply portfolio. We find nothing illogical in using the hedging program in conjunction with a mixed portfolio of gas supply contracts. Although short-term and market-index contracts included in such a portfolio are meant to balance and be balanced by long-

---

[1] Although the Attorney General makes this argument in his brief to this Court, at oral argument the Attorney General appeared to be willing to concede that a two-year trial hedging program is a "reasonable and prudent" experiment and that the only issue is one of law, i.e., whether costs associated with the hedging program may be characterized as among "the booked costs of gas sold" within the meaning of MCL 460.6h(1)(b); MSA 22.13(6h)(1)(b).

term contracts, there is evidence to support the PSC's finding that the short-term market has become more unstable recently. The hedging program appears to be a reasonable tool meant to manage this volatility with an eye toward tempering short-term cost fluctuations and thus better balancing the gas supply contract portfolio.

B

MCL 460.6h; MSA 22.13(6h) provides in pertinent part:

(13) In its order in a gas cost reconciliation, the commission shall require a gas utility to refund to customers or credit to customers' bills any net amount determined to have been recovered over the period covered in excess of the amounts determined to have been actually expensed by the utility for gas sold, and to have been incurred through reasonable and prudent actions not precluded by the commission order in the gas supply and cost review. Such refunds or credits shall be apportioned among the customers of the utility utilizing procedures that the commission determines to be reasonable. The commission may adopt different procedures with respect to customers served under the various rate schedules of the utility and may, in appropriate circumstances, order refunds or credits in proportion to the excess amounts actually collected from each such customer during the period covered.

(14) In its order in a gas cost reconciliation, the commission shall authorize a gas utility to recover from customers any net amount by which the amount determined to have been recovered over the period covered was less than the amount determined to have been actually expensed by the utility for gas sold, and to have been incurred through reasonable and prudent actions not precluded by the commission order in the gas supply and cost review. . . .

> Such amounts in excess of the amounts actually recovered by the utility for gas sold shall be apportioned among and charged to the customers of the utility utilizing procedures that the commission determines to be reasonable. The commission may adopt different procedures with respect to customers served under the various rate schedules of the utility and may, in appropriate circumstances, order charges to be made in proportion to the amounts which would have been paid by such customers if the amounts in excess of the amounts actually recovered by the utility for gas sold had been included in the gas cost recovery factors with respect to such customers during the period covered. Charges for such excess amounts shall be spread over a period that the commission determines to be appropriate.

The Attorney General argues that the PSC's decision to authorize the "rolling-over" of overcharges and undercharges into future GCR factors is "unlawful" because it shifts over-recoveries or excess costs from one GCR period to another GCR period without the benefit of a literal "refund" or "credit" to the customers' bills. The Attorney General contends that such a plan violates the Legislature's intent as expressed in the statute. He contends that adjustments in the future price of gas sold to customers are neither "refunds" nor "credits" in the ordinary sense.

The Attorney General also contends that the PSC's decision is "unreasonable," analogizing the elimination of the historical method in favor of the roll-over method to the case of refunds on credit card purchases. No one would argue that it is just or reasonable to charge an individual for a credit purchase yet to spread out any refund to all credit card users. The Attorney General argues that the roll-over method amounts to the same thing and is therefore unreasonable.

We disagree on both counts. The PSC's decision is not unlawful because MCL 460.6h(13) and (14); MSA 22.13(6h)(13) and (14) give the PSC discretion in fashioning refund and surcharge procedures. These provisions authorize, but do not require, the historical system that distinguished between classes of ratepayers. For example, subsection 13 provides that the PSC "may, in appropriate circumstances, order refunds or credits in proportion to the excess amounts actually collected from each such customer during the period covered." This language clearly gives the PSC power to order a refund procedure that operates in the manner of the historical refund procedure, but, just as clearly, does not require the PSC to do so.

We also hold that the PSC's decision is not "unreasonable." There is considerable evidence to support the PSC's conclusion that the relevant customer base has become more homogeneous, thus making it less important to structure refunds and surcharges by rate class. This homogeneity also undercuts the Attorney General's credit card refund analogy. Whereas individual credit card holders may vary their credit use and consumption patterns dramatically from year to year, the gas customers at issue here purchase gas from Mich Con on a relatively consistent basis from year to year. Although the new methodology will not perfectly match refunds and surcharges to the appropriate customers, the record demonstrates that the historical method is similarly imperfect. The PSC determined that the reduced precision of the new method was more than compensated for by its reduced cost.

The statute requires that refund and surcharge procedures be "reasonable." Contrary to the implication of the Attorney General's argument, the statute does not require adoption of the most

precise possible procedure. Rather, a more precise procedure may have other consequences, such as increased cost, which must be evaluated by the PSC in assessing the overall reasonableness of the procedure. The PSC may properly conclude that the refund procedure that is most precise is not to be adopted because of attendant costs. We believe that the language of the statute evinces a legislative intent to assign to the PSC the task of balancing such concerns and assessing the reasonableness of refund and surcharge procedures. We find no basis in law or on the record to upset the PSC's decision in this case.

Finally, the Attorney General argues that it was improper for the PSC to allow a change in refund methods outside the context of a general rate case inasmuch as the cost of the historical refund procedure is already built into Mich Con's rate base and, therefore, that Mich Con will realize a "windfall" until its base rates are reexamined. However, we have not been informed of the number of years remaining before Mich Con's base rates are open to review, and so we cannot gauge the size of the alleged "windfall." Regulatory lag is a common problem in the field of utility regulation. Sometimes the lag works in favor of utilities; sometimes it works against them. We decline to reverse the decision of the PSC on this basis alone.

Affirmed.