PEOPLE v TOLBERT

Docket No. 182583. Submitted December 19, 1995, at Grand Rapids. Decided April 19, 1996, at 9:10 A.M. Leave to appeal sought.

Cedrick K. Tolbert pleaded guilty in the Kent Circuit Court, Donald A. Johnston, J., of malicious destruction of property valued at more than $100. He was sentenced to six- to forty-eight-months' imprisonment to be served consecutively to a prior two- to ten-year sentence for a prior breaking and entering conviction, from which sentence the defendant had been paroled at the time he committed the malicious destruction of property offense. The defendant appealed, alleging that his sentence is not proportionate and that he should not be obligated to serve the maximum term of the sentence for the breaking and entering conviction before beginning to serve the sentence imposed for the malicious destruction conviction.

The Court of Appeals *held:*

1. The sentence imposed for the malicious destruction conviction is within the sentencing guidelines' prescribed range and, therefore, is presumptively proportionate. The defendant did not present evidence to refute the presumption. The court did not err in imposing the sentence.

2. The Court of Appeals is required by Administrative Order No. 1994-4 to follow the holding in *People v Young,* 206 Mich App 144 (1994), that MCL 768.7a(2); MSA 28.1030(1)(2) requires that the maximum term of a prior sentence must be served before the commencement of a sentence imposed for a new crime. Were it not for Administrative Order No. 1994-4, this panel would hold that *Young* was wrongly decided and that the act does not require that the defendant serve the maximum term imposed as a consequence of his breaking and entering conviction before commencing his sentence for malicious destruction.

Affirmed.

CRIMINAL LAW — SENTENCES — CONSECUTIVE SENTENCES — PAROLE.

A person who commits a crime while on parole must serve the sentence imposed for the new conviction consecutively to the remaining portion of the term of imprisonment imposed for the previous offense; the maximum term of the prior sentence must be served

before the commencement of the sentence imposed for the new crime (MCL 768.7a[2]; MSA 28.1030[1][2]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *T. Lynn Hopkins,* Assistant Prosecuting Attorney, for the people.

*Smith, Haughey, Rice & Roegge* (by *Elizabeth Roberts VerHey*), for the defendant.

Before: HOOD, P.J., and YOUNG and T. L. BROWN,* JJ.

YOUNG, J. Defendant pleaded guilty of malicious destruction of property valued at more than $100, MCL 750.377a; MSA 28.609(1). He was sentenced to six to forty-eight months of imprisonment to be served consecutively to a prior two- to ten-year sentence for breaking and entering, from which sentence defendant had been paroled at the time he committed the instant offense. Defendant appeals as of right his sentence and also challenges whether he is obligated to serve the maximum term of the sentence for the breaking and entering conviction before he may begin to serve the sentence imposed in this case.

I

The victim in this case lived in an apartment across the hall from defendant. On the morning of the crime, defendant rang the victim's doorbell and asked to use her telephone. She declined because she was using the telephone at that moment. Approximately fifteen minutes later, defendant again rang the victim's bell. This time defendant asked her for a ride. The victim

---

* Circuit judge, sitting on the Court of Appeals by assignment.

indicated that she was still on the telephone but would consider giving defendant a ride later. In response, defendant yelled: "If you don't open the door, you'll be sorry."

Thereafter, the victim observed defendant from her apartment window walking across the parking lot carrying a concrete block, which he threw through the windshield of her automobile. The damage exceeded $100.

Defendant waived his right to trial and pleaded guilty of malicious destruction of property. In exchange for defendant's plea, the prosecutor agreed to dismiss an habitual offender charge.

At the time of the malicious destruction crime, defendant was on parole from a two- to ten-year sentence imposed for a conviction of breaking and entering. The sentencing court noted that the manner in which the sentences would be served would be determined by the Department of Corrections. The parties agree that pursuant to *People v Young*, 206 Mich App 144; 521 NW2d 340 (1994), lv gtd 448 Mich 932 (1995), the Department of Corrections will require the ten-year maximum sentence to be served in full before defendant begins serving any part of the sentence imposed in this case.

II

A

Defendant first challenges the proportionality of his malicious destruction sentence. The scope of this Court's review of sentencing decisions is narrow, and we may not disturb a sentence imposed unless the trial court abused its discretion under the principles

of proportionality announced in *People v Milbourn,*
435 Mich 630; 461 NW2d 1 (1990).

The sentence imposed in this case fell within the
sentencing guidelines' prescribed range (zero to nine
months) and, therefore, is presumptively proportion-
ate. *People v Broden,* 428 Mich 343, 354-355; 408
NW2d 789 (1987). Defendant has presented no evi-
dence of "unusual circumstances" to remove his case
from that presumption. *Milbourn, supra* at 661.
Accordingly, we find no error in the sentence the trial
court imposed for the malicious destruction
conviction.

B

The more significant appellate challenge defendant
has raised concerns whether he must serve the maxi-
mum term of the sentence imposed for his breaking
and entering conviction before the sentence imposed
in this case commences. Where, as in this case, a per-
son commits a crime while on parole, MCL 768.7a(2);
MSA 28.1030(1)(2) (hereinafter the Act) requires that
the sentence for the new conviction be served con-
secutively to the "remaining portion of the term of
imprisonment imposed for the previous offense."[1]
Defendant does not challenge that he must serve his
new sentence consecutively to his prior sentence, but
does challenge whether the quoted portion of the Act

---

[1] The entire subsection states:

   If a person is convicted and sentenced to a term of imprisonment
   for a felony committed while the person was on parole from a sen-
   tence for a previous offense, the term of imprisonment imposed for
   the later offense shall begin to run at the expiration of the *remain-
   ing portion of the term of imprisonment imposed for the previous
   offense.* [Emphasis added.]

requires that the *maximum term* of the prior sentence must first be served.

Defendant frontally challenges this Court's decision in *People v Young*, wherein another panel of this Court concluded that the Act required that the maximum term of a prior sentence must be served before the commencement of a sentence imposed for a new crime. With due respect to our learned colleagues who formed the panel in *Young*, for the reasons stated herein we believe that defendant's challenge to *Young* is well-founded and that the *Young* case was wrongly decided.[2]

In *Young*, this Court was compelled to resolve a dispute regarding whether the portion of the Act quoted above required that the new term of imprisonment commence at the conclusion of the *maximum* term of the prior sentence or some lesser period. The Parole Board, through the Department of Corrections, in reliance on statutes[3] that address its jurisdiction

---

[2] We are aware that our Supreme Court has granted leave in *Young*; it held oral arguments on that case in November 1995. The Supreme Court's determination in *Young* will be controlling in this case. While we are tempted to hold this case in abeyance until the Supreme Court has rendered its decision in *Young*, we are obliged by Administrative Order No. 1994-4 to follow the rule ,4 announced in *Young* irrespective of our belief that case was wrongly decided. Consequently, we see no value in delaying release of this opinion.

[3] See MCL 791.238(5); MSA 28.2308(5), which, in turn, refers to MCL 791.234; MSA 28.2304. The two statutes provided, in part, before their reenactment on June 27, 1994, approximately one week before *Young* was decided:

A prisoner committing a crime while at large on parole and being convicted and sentenced for the crime shall be treated as to the last incurred term as provided under section 34. [MCL 791.238(5); MSA 28.2308(5).]

If a prisoner is sentenced for consecutive terms, whether received at the same time or at any time during the life of the original sentence, the parole board shall have jurisdiction over the pris-

over convicted felons and the manner in which it is to calculate terms for consecutive sentencing purposes, argued that parolees who commit a felony offense while on parole are subject to consecutive sentences, but that the subsequent sentence begins to run at the conclusion of the *minimum* term of the prior offense. *Young, supra* at 155. The prosecutor urged, and the trial court held, that the Parole Board's interpretation of the Act was flawed and that the · Act required that the *maximum* of the prior term be served before the new sentence began.

The *Young* panel did not give the phrase "remaining portion of the term of imprisonment imposed for the previous offense" its plain and customary meaning. Instead, that panel held that the phrase meant the maximum term of an indeterminate sentence imposed for the previous offense. *Id.* at 157-159. No dictionary we have consulted equates "remaining" with "maximum" or suggests that they are even loosely synonymous. Manifestly, "remaining portion" definitionally means *residuum* — that which is left over.[4] Courts do

oner for purposes of parole when the prisoner has served the total time of the added minimum terms, less the good time and disciplinary credit allowed by statute. The maximum terms of the sentences shall be added to compute the new maximum term under this subsection, and discharge shall be issued only after the total of the maximum sentences has been served less good time and disciplinary credits, unless the prisoner is paroled and discharged upon satisfactory completion of the parole. [MCL 791.234(2); MSA 28.2304(2).]

[4] By way of example, Webster's New World Dictionary of the American Language (2d College Ed), p 1201, defines "remainder" as follows:

1. those remaining 2. what is left when a part is taken away; the rest . . . .
*SYN.*—**remainder** is the general word applied to what is left when a part is taken away *[the remainder* of a meal, one's life, etc.*]*; **residue** and **residuum** apply to what remains at the end of a process,

not have broad discretion to interpret unambiguous language in a statute:

> The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). Nothing will be read into a statute that is not within the manifest intention of the Legislature as gathered from the act itself. *In re Marin,* 198 Mich App 560, 564; 499 NW2d 400 (1993). The first criterion in determining intent is the specific language of the statute. *House Speaker v State Administrative Bd,* 441 Mich 547, 567; 495 NW2d 539 (1993). The Legislature is presumed to have intended the meaning it plainly expressed. *Frasier v Model Coverall Service, Inc,* 182 Mich App 741, 744; 453 NW2d 301 (1990). As explained in *Nat'l Exposition Co v Detroit,* 169 Mich App 25, 29; 425 NW2d 497 (1988):
>
> "A cardinal rule of statutory construction is that courts may not speculate as to the probable intent of the Legislature beyond the words employed in the statute. A word or phrase in a statute is to be given its plain and ordinary meaning. . . . When the language of a statute is clear and unambiguous, judicial construction is neither required nor permitted. Such a statute must be applied, and not interpreted, since it speaks for itself. [*In re Schnell,* 214 Mich App 304, 309-310; 543 NW2d 11 (1995).]

The *Young* panel examined the statutes relied upon by the Department of Corrections, MCL 791.238(5); MSA 28.2308(5) and the statute referred to therein, MCL 791.234(2); MSA 28.2304(2) (renumbered in 1994 as MCL 791.234[3]; MSA 28.2304[3]; hereafter referred

---

as after the evaporation or combustion of matter or after the settlement of claims, etc. in a testator's estate.

to as the "Parole Statutes"; see footnote 3, *supra*), and concluded that they supported the department's position. *Young, supra* at 156. Notwithstanding, the *Young* panel held that "the interpretation of the Department of Corrections is contrary to a plain reading of [the Act] and contrary to the legislative intent." *Id.* The panel was able to do so because it found conflict between the Act and the two Parole Statutes (addressed to the jurisdiction of Parole Board), and further found—not on the basis of a construction of the language of the Act, but on the basis of an informal House legislative analysis of the Act when it was proposed—that our Legislature intended that the maximum term of the prior sentence be served before the new consecutive sentence began.[5] *Id.* at 156-158.

Having found a "conflict" between these three statutes, the *Young* panel resolved it by resort to the questionable doctrine of "implied repeal."[6] The *Young* Court held that the Act, being enacted later than the Parole Statutes, evidenced the Legislature's implied repeal of the Parole Statutes. *Id.* at 158. The frank error of the *Young* panel's statutory construction and its implied repeal rationale were proved by the Legis-

---

[5] It has been observed in the federal context that resort to "legislative history" in the search for legislative intent is a perilous venture. *Marposs Corp v Troy*, 204 Mich App 156, 167-168, n 2; 514 NW2d 202 (1994) (TAYLOR, P.J., dissenting), quoting Address by Justice Antonin Scalia before the Attorney General's Conference on Economic Liberties (June 14, 1986). This enterprise is doubly fraught with danger in Michigan which, unlike Congress, has failed to create an authoritative legislative record. *Id.*

[6] Repeals by implication are disfavored in the law. *Rocco v Dep't of Mental Health*, 114 Mich App 792, 797-798; 319 NW2d 674 (1982), aff'd 420 Mich 567; 363 NW2d 641 (1984). The wisdom of this principle of disfavor is most aptly illustrated in the *Young* case itself wherein the statutes there held impliedly repealed were reenacted just days before the publication of *Young*. See 1994 PA 217, approved June 24, 1994, and filed June 27, 1994. *Young* was decided July 5, 1994.

lature's reenactment of the Parole Statutes—on June 27, 1994, approximately a week before *Young* was decided.[7]

Contrary to our colleagues on the *Young* panel, we conclude that the Act and the Parole Statutes work in harmony with one another and that there is no conflict between them. The three statutes respect the division of roles between the courts, which sentence defendants, and the executive branch (through the Department of Corrections), which has jurisdiction over the disposition of persons who have been sentenced. See MCL 791.266; MSA 28.2326 (defendants are sentenced to the custody of the Department of Corrections).

The Act is addressed to the judiciary and mandates consecutive sentences for parolees who commit crimes while on parole. It does not, however, concern postsentencing dispositional issues such as how much time of a prior indeterminate sentence a convicted person must serve before the new sentence to be consecutively served commences. The Parole Statutes, on the other hand, address the jurisdiction of the Parole Board. Not surprisingly, the Parole Statutes *do* prescribe dispositional issues, including the amount of time of a prior sentence a parolee must serve before his new sentence begins.

Given the differing roles of the judiciary and the Department of Corrections in the sentencing and disposition of persons convicted of crimes, it is entirely consistent that the Legislature chose to use "remaining portion" rather than "maximum term" in the Act.

---

[7] The reenacted Parole Statutes contained minor changes not material to the decision in *Young*.

If, as the *Young* panel presumed, it had been the Legislature's intent to change these roles and impose on the courts dispositional issues that customarily have been within the jurisdiction of the Department of Corrections, it could have made that intent clear by using "maximum term" rather than "remaining portion" in the Act to signify that the Parole Board's traditional jurisdiction was extinguished.

But for the compulsion mandated by Administrative Order No. 1994-4 that we follow *Young*, we would hold that the Act does not require that the defendant serve the maximum term imposed as a consequence of his breaking and entering conviction before commencing his sentence for malicious destruction.

Affirmed.