*In re* PAROLE OF FRANCIOSI

Docket No. 195864. Submitted March 10, 1998, at Detroit. Decided May 26, 1998. Submitted on rehearing July 7, 1998, at Detroit. Decided on rehearing September 25, 1998, at 9:00 A.M. Leave to appeal sought.

Sabatino Franciosi appealed by leave granted in the Wayne Circuit Court a decision by the Parole Board to deny him parole. The court, Pamela R. Harwood, J., remanded the matter to the Parole Board for a new interview, at which Franciosi could be represented by an attorney, and for a decision reached after collegial discussion by a Parole Board panel. The court ruled that MCL 791.235(6); MSA 28.2305(6), which prohibits attorneys from representing prisoners during parole interviews, violates the Equal Protection Clauses of the federal and state constitutions, and that MCL 791.206(2); MSA 28.2276(2) and 1984 AACS, R 791.7765 require that all three members of a Parole Board panel meet in collegial discussion before issuing a decision. The Parole Board appealed by leave granted in the Court of Appeals. The Court of Appeals issued an opinion on May 26, 1998. The Parole Board moved for a rehearing, which was granted. Following rehearing, the Court of Appeals issued a new opinion and vacated the earlier one.

The Court of Appeals *held*:

1. The statutory exclusion of attorneys, as a class, from parole interviews does not violate equal protection inasmuch as it is rationally related to legitimate governmental purposes. The Parole Board's evaluation of a prisoner's readiness for parole is best achieved in a system that fosters openness, sincerity, and candor on the part of a prisoner who can speak his own words unguided by the presence or promptings of counsel. Moreover, if counsel were allowed at parole interviews, a significant economic burden would be placed on the state in terms of having to provide counsel to indigent prisoners.

2. MCL 719.206(2); MSA 28.2276(2), in requiring that all decisions and recommendations of the Parole Board shall be by a majority vote of the Parole Board or a Parole Board panel, does not expressly require that a Parole Board panel meet in collegial discussion before reaching a decision. Great weight must be given to statutory construction by the Parole Board, as the agency charged

with enforcement of the statute, that the statute allows the Parole Board's practice of circulating a parole file from one member to another until a majority decision is reached. Given the Parole Board's longstanding interpretation and the absence of any changes by the Legislature to the statute, it may be presumed that the Legislature is aware of the Parole Board's interpretation and has approved it.

Reversed.

YOUNG, JR., P.J., concurring, stated that the Parole Board's practice of deciding parole eligibility on the basis of a "noncollegial" vote of two members of a three-member panel is consistent with the text of the relevant statute and administrative rule; it is not necessary to consider the other bases relied on by the majority.

1. PAROLE — PAROLE INTERVIEWS — EXCLUSION OF ATTORNEYS — CONSTITUTIONAL LAW — EQUAL PROTECTION.

The statutory prohibition against attorney representation of a prisoner at a parole interview does not violate equal protection; the exclusion of attorneys at parole interviews is rationally related to legitimate governmental purposes of fostering openness, sincerity, and candor by prisoners so that their readiness for parole can be evaluated by the Parole Board and of avoiding the significant economic burden that would fall on the state from having to appoint counsel for indigent prisoners (MCL 791.235[6]; MSA 28.2305[6]; US Const, Am XIV; Const 1963, art 1, § 2).

2. PAROLE — PAROLE BOARD — PANEL DECISIONS.

A three-member Parole Board panel, when deciding a prisoner's eligibility for parole, need not meet in collegial discussion before reaching a decision and can circulate a parole applicant's file from one member to another until a decision by at least a majority of the members is reached (MCL 791.206[2]; MSA 28.2276[2]; 1996 AACS, R 791.7765).

*Neal Bush,* for Sabatino Francoisi.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Chester S. Sugierski, Jr.,* Assistant Attorney General, for the Parole Board.

Before: YOUNG, JR., P.J., and KELLY and DOCTOROFF, JJ.

KELLY, J. Respondent, the Michigan Parole Board, appeals by leave granted from a June 5, 1996, order of the Wayne Circuit Court remanding this matter to respondent for reconsideration. By this order, the trial court declared unconstitutional MCL 791.235(6); MSA 28.2305(6), which prohibits an attorney from representing a prisoner at a parole release hearing. The court also construed MCL 791.206(2); MSA 28.2276(2) and 1984 AACS, R 791.7765 as requiring that all three members of a Parole Board panel meet in collegial discussion before issuing a decision. Finally, the lower court held that respondent was required by MCL 791.233e(6); MSA 28.2303(6)(6) to give substantial and compelling reasons for denying petitioner, Sabatino Franciosi, parole in light of petitioner's parole guideline score, which reflected a "high probability of parole." We reverse.[1]

In November of 1992, petitioner was found guilty of sexually assaulting his nine-year-old stepdaughter. He

---

[1] On May 26, 1998, this Court issued an opinion reversing the Wayne Circuit Court's June 5, 1996, order. In this Court's opinion, we concluded that the circuit court erred in holding MCL 791.235(6); MSA 28.2305(6) unconstitutional. In light of the remaining issues being moot, we declined to opine further. On June 3, 1998, respondent filed a motion for rehearing requesting that this Court resolve petitioner's second issue involving the adequacy of allowing two members of the three-member panel to decide petitioner's eligibility for parole when they are in agreement without the third member casting a vote pursuant to MCL 791.206(2); MSA 28.2276(2) and Rule 791.7765. Subsequently we granted respondent's motion for rehearing to resolve this single issue. On issuing today's opinion, we simultaneously vacated our opinion dated May 26, 1998; however, we have incorporated its holding herein. We now address petitioner's first two issues on appeal. The remaining issue, involving respondent's failure to give substantial and compelling reasons for denying parole, has been rectified by the subsequent Parole Board hearing in which it assessed petitioner's eligibility for parole. Therefore, that issue need not be reviewed by this Court at this time.

was thereafter sentenced to four to fifteen years' imprisonment.

In July of 1995, the process to consider petitioner for parole began with the preparation of a parole eligibility report. Petitioner was interviewed by a Parole Board member, and a Parole Board agent completed a parole guideline scoresheet. Petitioner scored a "+8."[2]

On November 17, 1995, two members of the three-member parole panel voted for a twelve-month continuance on petitioner's parole petition. The third member of the panel took no action. "Insufficient progress" and the "nature of crime" were listed as the reasons for the continuance.

On December 7, 1995, petitioner filed an application for leave to appeal respondent's decision in the Wayne Circuit Court. Among other things, petitioner argued that precluding a prisoner from being represented by an attorney at the parole interview was a denial of equal protection, that the decision to grant or deny parole could not be made by only two members of the three-member panel, and that in light of his score of "+8" on the parole guideline scoresheet, respondent was required to provide substantial and compelling reasons for denying petitioner parole. Leave to appeal was granted on or about March 29, 1996.

In an opinion dated June 5, 1996, the lower court found that because there was no rational basis for excluding licensed attorneys from participating in the parole interview, MCL 791.235(6); MSA 28.2305(6)

---

[2] Apparently, a score equal to or greater than "+4" classifies a prisoner as having a "high probability of parole."

was unconstitutional. The court also found that respondent's practice of allowing two members of a three-member board to decide a prisoner's eligibility for parole violated Rule 791.7765. Finally, the court found that respondent was required, but failed, to state substantial and compelling reasons for its denial of parole. In an order dated June 5, 1996, the lower court indicated as follows:

> The court remands this matter for a new interview before a three member panel at which [petitioner] may be represented by an attorney. The interview shall occur within 30 days of the date of this order. Within 60 days of entry of this order, the Board shall parole [petitioner] or if [petitioner's] parole is denied, the respondent shall state substantial and compelling reasons in writing for its denial.

Respondent's subsequent application for leave to appeal to this Court was granted on November 1, 1996. No stay of proceedings was granted by this Court.

While respondent's appeal was pending, presumably pursuant to the lower court order requiring another parole review, respondent[3] reconsidered petitioner's parole and issued a decision denying parole on November 21, 1996. The "notice of action by parole board" provided as follows:

> After conducting the interview and considering the results of the psychological evaluation the board lacks reasonable assurance that the prisoner will not become a menace. Specifically it is unclear if he poses a risk to minor females as a sexual deviant pedophile as suggested by the crime, the pattern of abuse and information relative to sex-

---

[3] This time, all three members of the three-member panel considered petitioner's eligibility for parole.

ual fantasies of the victim, or in the alternative if the crime is a result of anger directed towards the prisoner's ex-wife and represents him striking out at her. Given the equivocation, the Parole Board views society is better protected if the prisoner is continued until a therapy program is completed and the Board can discuss its findings with the prisoner.

On appeal, respondent first argues that the trial court erred in concluding that the statutory preclusion of attorneys from parole interviews found in MCL 791.235(6); MSA 28.2305(6)[4] violated the Equal Protection Clauses of the federal and state constitutions, US Const, Am XIV; Const 1963, art 1, § 2. Petitioner argued to the lower court that MCL 791.235(6); MSA 28.2305(6) was unconstitutional because it treated attorneys, as a class, differently from the public at large and that there was no rational reason for this disparate treatment. The lower court agreed, finding that the classification was "entirely arbitrary." Whether the statutory preclusion of attorneys from parole interviews is violative of equal protection is an issue of first impression in the state of Michigan.

When a legislative classification is challenged as being violative of equal protection, the validity of the

---

[4] MCL 791.235(6); MSA 28.2305(6) provides in pertinent part as follows:

A prisoner may waive the right to an interview by 1 member of the parole board. The waiver of the right to be interviewed shall be given not more than 30 days after the notice of intent to conduct an interview is issued and shall be made in writing. During the interview held pursuant to a notice of intent to conduct an interview, the prisoner may be represented by an individual of his or her choice. The representative shall not be another prisoner or an attorney. A prisoner is not entitled to appointed counsel at public expense. The prisoner or representative may present relevant evidence in support of release.

classification will be measured by this Court employing one of three tests. *People v Pitts*, 222 Mich App 260, 272; 564 NW2d 93 (1997). Which test will be applied is dependent on the type of classification and the nature of the interest affected. *Id.* at 273. When the legislation at issue creates an inherently suspect classification, such as race, alienage, ethnicity, and national origin or affects a fundamental interest, the "strict scrutiny" test applies. The "substantial relationship" test is applied to other classifications that are suspect, but not inherently suspect, such as gender and mental capacity. The "rational basis" test is applied when the classification is not inherently suspect, or a fundamental interest is not involved. *Id.*

Because attorneys are not a suspect class and an attorney's participation in a client's parole interview is not a fundamental interest,[5] we agree with the lower court's determination that the rational basis test should be applied in this case. Under the rational basis test, the legislation is presumed to be constitutional and the party challenging the statute has the burden of proving that the legislation is arbitrary and thus irrational. *People v Sleet*, 193 Mich App 604, 607; 484 NW2d 757 (1992). "Under this test, a statute will be upheld if the classification scheme it has created is rationally related to a legitimate governmental purpose." *Pitts, supra* at 273.

Contrary to the lower court's findings, we believe that the preclusion of attorneys from a parole interview is rationally related to a legitimate governmental purpose. Clearly, the purpose of the interview is to

---

[5] "Fundamental interests include the right to vote and travel, due process in criminal matters, and specific guarantees in the bill of rights." *In re Contempt of Stone*, 154 Mich App 121, 128; 397 NW2d 244 (1986).

assess a prisoner's readiness for parole. Such an evaluation can best be achieved by hearing the inmate's own words, unguided by the presence or promptings of counsel, and particularly without a formalization of the interview process through objections of a technical nature. In other words, the goal of assessing an inmate's readiness for parole can best be achieved in a system that fosters openness, sincerity, and candor. Permitting attorneys to attend and represent the prisoner, realistically, would impede this goal. Any argument that a prisoner's demeanor would not be influenced by the attendance of legal counsel is disingenuous.

Our conclusion is bolstered by *Holup v Gates*, 544 F2d 82 (CA 2, 1976). With regard to Connecticut's parole board policy of excluding attorneys at parole hearings, the *Holup* court indicated as follows:

> The justification advanced by the Board for excluding counsel or counsel-substitute from the hearing itself is quite reasonable: The purpose of the hearing in the Connecticut system is to enable the members personally to speak with and observe the inmate, to determine his attitude towards his crime, readiness for parole and the like. The members feel that this can best be achieved by hearing the inmates' own words, unguided by the presence or promptings of counsel. We find that the state's interest in excluding persons other than the inmate from the hearings outweighs the "need for and usefulness" to the inmate of having such a representative, despite the inmate's concededly great interest in the decision being made. [*Id.* at 84.]

Further, we note that that statutory classification also is rationally related to legitimate economic considerations. If an inmate were permitted to have an attorney represent him at the parole hearing and could afford to do so, the argument could be made

that if affluent prisoners could be represented by retained counsel at parole interviews, then indigent prisoners would be entitled to counsel at public expense. See *Douglas v California*, 372 US 353, 358; 83 S Ct 814; 9 L Ed 2d 811 (1963). Providing such representation to indigent inmates would be a significant economic burden on the state and it would be reasonable for the state to seek to avoid such a burden.

In sum, we conclude that the lower court erred in holding that MCL 791.235(6); MSA 28.2305(6) was unconstitutional. The statutory provision, being rationally related to legitimate governmental purposes, is not violative of equal protection.

Next, respondent claims that the lower court erred in ruling that the Parole Board violated MCL 791.206(2); MSA 28.2776(2) and Rule 791.7765 by permitting two members of a three-member board to decide petitioner's eligibility for parole. We agree. In our original opinion in this matter, we declined to review this issue because we determined it was moot. However, we subsequently granted respondent's motion for rehearing with regard to this matter and now address the merits of this claim because we believe that this issue is one which is likely to recur yet is also likely to evade judicial review by the appellate courts. Therefore, we now address this issue on the merits, notwithstanding that it is technically moot. *In re Midland Publishing Co, Inc*, 420 Mich 148, 152, n 2; 362 NW2d 580 (1984); *Hinton v Parole Bd*, 148 Mich App 235; 383 NW2d 626 (1986).

MCL 791.246; MSA 28.2316 provides:

> All decisions and recommendations of the parole board required by this act shall be by a majority vote of the parole

board or a parole board panel created pursuant to section 6(2).

MCL 791.206(2); MSA 28.2776(2) provides:

> The director may promulgate rules providing for a parole board structure consisting of 3-member panels.

The director has promulgated a rule providing for three-member Parole Board panels. 1996 AACS, R 791.7765(1) states in pertinent part:

> The parole board shall be divided into panels that are comprised of 3 members each, as designated by the chairperson of the parole board, and shall make parole release, revocation, and rescission decisions for prisoners serving indeterminate sentences . . . . The decisions specified in this subrule shall be made by a concurrence of the majority of the parole board panel members.

Whether the Parole Board's practice of permitting a three-member panel to simply circulate the parole file from one member to another, rather than meeting collegially and all voting, is consistent with the foregoing provisions turns upon statutory construction. This Court's goal in interpreting a statute is to ascertain the intent of the Legislature. *People v Burton*, 219 Mich App 278, 286; 556 NW2d 201 (1996). "The first criterion in determining the Legislature's intent is the specific language of the statute. . . . If the plain and ordinary meaning of the language is clear, judicial construction is normally neither permitted nor necessary." *People v Cohen*, 217 Mich App 75, 79; 551 NW2d 191 (1996).

Reviewing the specific language of the statute, we note that nothing in the pertinent provisions requires that the panel meet collegially, nor is there any indi-

cation in the provisions at issue that all three members of the panel are required to exercise a vote. Instead, the statutes simply indicate that Parole Board decisions are to be made by a majority vote.

It is axiomatic that the courts are required to give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with its enforcement. *Attorney General v Public Service Comm*, 215 Mich App 356, 364; 546 NW2d 266 (1996). This includes statutory provisions regarding the agency's power and jurisdiction. *In re Filing Requirements for Telecommunications Complaints*, 210 Mich App 681, 692; 534 NW2d 234 (1995). In this case, respondent, by affidavit of the chairperson of the Parole Board, informed the circuit court that, historically, the Parole Board has always made its decisions through sequential consideration, independently, until such time as a majority of the panel is reached. At that time, the passing of the file from member to member terminates. In light of the absence of any statutory requirement for collegial discussion, the Parole Board's interpretations of the provisions at issue to permit review of parole eligibility in the manner done in this case seems to be a very practical method of disposing of the Parole Board's large caseload and we see no reason to require the Parole Board to discontinue this practice.

We also note that, as is apparent from the legislative history, the Legislature has been aware of the Parole Board's practices and, when amending the various statutory provisions governing the Parole Board, the Legislature took no action to alter the conduct at issue. In 1982, when the statutes were amended to, among other things, permit the board (at

that time, consisting of seven members) to operate in three-member panels, an analysis of HB 4162, which was ultimately enacted into law,[6] observed:

> At present, the parole board is required "to cause each prisoner to be brought before it," together with all pertinent information on that prisoner, at least one month before the expiration of the petitioner's minimum sentence, less good time allowances. Among the information the parole board must have before reaching a decision on parole is a parole eligibility report detailing the prisoner's institutional record, which is prepared by the correctional institution where the prisoner is incarcerated. The law requires that decisions of the parole board be made by a majority vote; thus, four members must approve an order of parole. *Given these statutory provisions, the general practice of the parole board has been to circulate a prisoner's file among board members until three members have given their approval to parole for the prisoner. A fourth board member then conducts an interview with the prisoner at the institution, after which this board member may either approve parole for the prisoner or bring the case back for a final decision involving the other board members.* [House Legislative Analysis, HB 4162, February 23, 1982 (emphasis supplied).]

Although the legislation has been amended to alter the number of members considering the parole eligibility, the fact that the decision must be made by a majority of the panel, regardless of the number of members sitting, has remained constant. By the change in the legislation in 1982, the Legislature made no effort to revise the manner in which a Parole Board panel, of whatever number, operates, but only to allow the board to function in three-member panels. When an act has been interpreted in a particular manner and the Legislature has made amendments

---

[6] 1982 PA 314.

but has not changed the pertinent language of the legislation giving rise to a particular interpretation, this Court will presume that the Legislature was aware of an agency's interpretation and has approved of the construction given to the statute. *Alexander v Liquor Control Comm*, 35 Mich App 686, 688; 192 NW2d 505 (1971).

In sum, we hold that nothing in the provisions at issue prohibits the Parole Board from allowing two members of a three-member Parole Board panel, if they agree on the release, revocation, or recission decision, to decide a petitioner's eligibility for parole. Therefore, the Parole Board may continue that practice.

The remaining issue raised by respondent need not be addressed by this Court today. As set forth above, after this Court granted respondent's application for leave to appeal, because there was no stay of proceedings, respondent once again considered petitioner's eligibility for parole. Although respondent once again denied parole to petitioner, it did so only after setting forth in great detail its reasons for denying parole. Consequently, because a panel evaluated petitioner's eligibility for parole and provided detailed reasons for its decision to deny parole, we need not address whether respondent was required to state substantial and compelling reasons for denying petitioner parole.

Reversed.

DOCTOROFF, J., concurred.

YOUNG, JR., P.J. (*concurring*). I concur in the majority's opinion concerning the resolution of the constitutional claim. I write separately to indicate that I reach

by a slightly different route the conclusion that the Parole Board may legally continue the practice of permitting two of three members of a Parole Board panel to decide parole eligibility without meeting for collegial discussion.

I agree with the majority that it is appropriate to address the Parole Board's claim that the trial court erred in concluding that the Parole Board's practice of deciding parole eligibility on the basis of a "noncollegial" vote of two members of a three-member panel was violative of MCL 791.206(2);   MSA 28.2776(2) and 1996 AACS, R 791.7765.  Although moot in this case, the legitimacy of this practice presents a recurring question that may evade appellate review. See *In re Midland Publishing Co, Inc*, 420 Mich 148, 152, n 2; 362 NW2d 580 (1984).

However, I conclude that the Parole Board's practice is lawful solely because it is entirely consistent with the text of the relevant statute and administrative rule. Our role in considering such matters is to determine the legislative (or administrative) intent by construing the text and giving its words their reasonable meaning. *Lorencz v Ford Motor Co*, 439 Mich 370, 376-377; 483 NW2d 844 (1992).  Once we have done so, and if we find the text unambiguous, our task in construing a statute is at an end and we must simply *apply* the statute to the situation at hand. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995).

Nothing in the statute or administrative rule precludes the Parole Board's stated practice. Consequently, I find it unnecessary to consider nontextual bases for reversing the trial court's contrary decision and would reverse solely on the basis that the prac-

tice is allowed by the terms of the statute and implementing administrative rule.[1]

---

[1] The majority relies on "legislative history" in support of its conclusion. I have questioned elsewhere the folly of this approach to statutory construction. My criticism bears repeating here:

It has been observed in the federal context that resort to "legislative history" in the search for legislative intent is a perilous venture. *Marposs Corp v Troy*, 204 Mich App 156, 167-168, n 2; 514 NW2d 202 (1994) (TAYLOR, P.J., dissenting), quoting Address by Justice Antonin Scalia before the Attorney General's Conference on Economic Liberties (June 14, 1986). This enterprise is doubly fraught with danger in Michigan which, unlike Congress, has failed to create an authoritative legislative record. *Id.* [*People v Tolbert*, 216 Mich App 353, 360, n 5; 549 NW2d 61 (1996).]

Moreover, I question whether the "practice" at issue constitutes an "interpretation" or "construction" of a regulatory statute to which we ordinarily give deference. To the contrary, I am unable to discern from the Parole Board chairman's "affidavit" whether the Parole Board has actually considered the proper interpretation of MCL 791.206(2); MSA 28.2776(2).