575 N.W.2d 302 (1997)
227 Mich. App. 148
ATTORNEY GENERAL, Appellant,
v.
MICHIGAN PUBLIC SERVICE COMMISSION, Consumers Power Company and Energy Michigan, Appellees.
Docket No. 193893.
Court of Appeals of Michigan.
Submitted December 9, 1997, at Lansing.
Decided December 23, 1997, at 9:05 a.m.
Released for Publication March 10, 1998.
Frank J. Kelley, Attorney General, Thomas L. Casey, Solicitor General, and J. Peter Lark and Robert L. Mol, Assistant Attorneys General, for Attorney General.
Don L. Keskey, Assistant Attorney General, for Public Service Commission.
David A. Mikelonis, Jon R. Robinson, and Kelly M. Hall, Jackson, for Consumers Power Company.
Before O'CONNELL, P.J., and WHITE and BANDSTRA, JJ.
PER CURIAM.
The Attorney General appeals an order of the Michigan Public Service Commission (PSC) granting ex parte approval of a contract between Consumers Power Company and The Upjohn Company for the provision of retail electric service at reduced rates. We affirm.
On December 4, 1995, Consumers filed an application with the PSC requesting ex parte approval of a contract it had negotiated with Upjohn to provide Upjohn with electricity at discounted rates over a ten-year period. Consumers' application stated that Upjohn was one of Consumers' largest electric customers, with several facilities in the Kalamazoo area. According to Consumers, Upjohn had been investigating a number of alternative energy sources in order to reduce its energy costs, including the possibility of installing energy cogeneration equipment or relocating production to facilities located outside the State of Michigan. An engineering analysis performed by Consumers confirmed that Upjohn's facilities were well-suited for installation of a cogeneration facility.
The contract provides that, except in cases of emergency, Consumers is to be the sole supplier of electricity to Upjohn over the ten-year term of the contract. Although the contract discount rates are below the PSC-approved rates that would otherwise apply to Upjohn's purchases of Consumers' electricity, *303 Consumers maintained that the discount rates would still exceed the variable costs associated with producing the energy involved.
Consumers claims that it negotiated the discount rate contract with Upjohn in good faith and that the discount rate was necessary in order to avoid the loss of Upjohn from its existing customer base and the associated loss of Upjohn's contribution to the fixed costs of Consumers' system. According to Consumers, retention of Upjohn's competitively "at-risk" load would also help stabilize Consumers' industrial load, better enable Consumers to attract new load, and otherwise promote economic development within the service area. Consumers also argues that retention would demonstrate to the financial community Consumers' commitment to meet competitive challenges.
Consumers also maintains that because the Upjohn contract does not increase any existing electric rates paid by Consumers' other customers, the PSC may approve the contract ex parte, without the notice and opportunity for a contested case hearing ordinarily required by M.C.L. § 460.6a(1); M.S.A. § 22.13(6a)(1). Specifically, subsection 6a(1) provides, in pertinent parts:
When a finding or order is sought by a gas or electric utility to increase its rates and charges or to alter, change, or amend any rate or rate schedules, the effect of which will be to increase the cost of services to its customers, notice shall be given within the service area to be affected.... An alteration or amendment in rates or rate schedules applied for by a public utility that will not result in an increase in the cost of service to the customers may be authorized and approved without notice or hearing. [Emphasis added.]
On the other hand, Consumers' application for ex parte approval of the contract also purported to reserve Consumers' right to seek a rate increase at some point in the future based upon the loss of revenue associated with charging Upjohn the discount rates.
On December 15, 1995, the PSC issued a written decision and order granting ex parte approval of the Consumers' contract with Upjohn. The PSC agreed with Consumers that traditional notice requirements are unnecessary because approving the contract does not increase any customer's rates. The PSC opined that the contract is reasonable and beneficial to both Consumers' other customers and the public interest. The PSC also found that Consumers' other customers were protected against the revenue shortfall resulting from the contract, noting that if Consumers ever seeks to increase other customers' rates as a result of the shortfall, Consumers will be held to the stringent evidentiary standards articulated in previous PSC decisions.
On January 12, 1996, the Attorney General intervened in the proceedings before the PSC, pursuant to M.C.L. § 14.28; M.S.A. § 3.181, and filed a timely petition for rehearing pursuant to M.C.L. § 460.351; M.S.A. § 22.111. The Attorney General argued that the PSC's approval of the Upjohn contract without notice and an opportunity for a contested case hearing violates subsection 6a(1) because the PSC left open the possibility of Consumers obtaining an increase in its other customers' rates in the future based upon the revenue shortfall created by the contract. The Attorney General contended that the only way the PSC could approve the contract without public notice and an opportunity for hearing would be if the PSC ruled that all discounts and costs resulting from the Upjohn contract must always be borne by Consumers and its shareholders only, and never by any of Consumers' other customers.
In a decision issued March 26, 1996, the PSC denied rehearing, stating that notice and an opportunity for hearing was not required because the PSC's December 15, 1995, order approving the Upjohn contract does not actually authorize an increase in any customer's rates:
Notwithstanding assertions to the contrary, approving Consumers' special contract on an ex parte basis did not violate M.C.L. § 460.6a; M.S.A. § 22.13(6a). This statute expressly provides that where, as here, any "alteration ... in rates or rate schedules ... will result in no increase in the cost of service to ... customers," that *304 change may be authorized and approved without any notice or hearing. M.C.L. § 460.6a(1); M.S.A. § 22.13(6a)(1).... Therefore, because the December 15, 1995 order approving Consumers' special contract with Upjohn did not authorize an increase in any customer's rates, it did not run afoul of the statute. [Citation omitted.][1]
On appeal, the Attorney General contends that the PSC has misinterpreted subsection 6a(1) by concluding that notice and hearing is required only if a rate or cost increase is actually authorized by the PSC's order. Instead, the Attorney General argues that the focus should be on whether the underlying amendment or alteration of rates approved by the PSC creates any potential for a rate or cost increase in the future. The Attorney General argues that whenever a proposed alteration of rates may have the effect of increasing costs to customers in the future, it cannot be said that the alteration "will not result" in a cost or rate increase. According to the Attorney General, only when the PSC can affirmatively state that the alteration of rates will not result in any increase in costs to customers at any time, now or in the future, may the PSC approve the alteration of rates ex parte. Of course, the PSC's decision in this case contains no such assurances, but in fact expressly recognizes the possibility that Consumers may someday seek to increase other customers' rates to recover the revenue shortfall resulting from the Upjohn contract.
The Attorney General bears the burden of proving by clear and satisfactory evidence that the PSC's decision is unlawful or unreasonable. M.C.L. § 462.26(8); M.S.A. § 22.45(8). Although statutory interpretation is a question of law subject to review de novo on appeal, this Court ordinarily will defer to the construction placed on statutory provisions by the governmental agency charged with applying them, unless the agency interpretation is clearly wrong. Jones-Jennings v. Hutzel Hosp. (On Remand), 223 Mich.App. 94, 105, 565 N.W.2d 680 (1997). To the extent that the Attorney General argues that the PSC's interpretation of subsection 6a(1) should be accorded less deference or should be subjected to greater scrutiny because the statute was approved by a vote of the electorate in 1982, the Attorney General's argument is unpersuasive. The 1982 amendments did not alter the statutory language at issue (which was originally enacted, in substantively identical form, by 1952 P.A. 243).
We are not persuaded that the PSC's interpretation of subsection 6a(1) is unreasonable or contrary to the statutory language. The PSC's interpretation recognizes that merely approving and implementing the rate amendments in question is not sufficient, in and of itself, to cause any rate or cost of service increase to occur. That is, even though the PSC may not have prohibited the utility from seeking a rate increase at some point in the future, and even though the PSC may have expressly laid the groundwork for such a future rate increase request, the fact remains that mere approval and implementation of the contract, without more, will not result in any rate or cost increases. In this regard, the discount contract may be viewed as merely resulting in a reason for Consumers to seek a rate increase in the futurei.e., a reduction in Consumers' rate revenues, as opposed to actually resulting in any future cost or rate increases that may occurafter proper notice and a full contested case hearing, in the event that Consumers seeks to recover its lost Upjohn revenue from its other customers. The PSC's interpretation is plausible and consistent with the literal language of subsection 6a(1) because the statute is silent with respect to whether the rate alteration in question must be sufficient in and of itself to cause, "effect," or "result in" an increase in the cost of services to the utility's customers, or whether notice and a hearing is required whenever any rate alteration merely provides the reason for a subsequent rate increase to be granted in some future PSC proceeding.
*305 We also find the PSC's interpretation of subsection 6a(1) to be reasonably consistent with the Legislature's intent to ensure notice and an opportunity for hearing whenever a rate or cost-of-service increase may occur. Although the PSC approved Consumers' contract with Upjohn ex parte, all interested parties will have ample opportunity for notice and a hearing in the event Consumers ever seeks an actual rate increase in order to recover the lost revenue resulting from the Upjohn contract. Cf. Attorney General v. Public Service Comm., 220 Mich.App. 561, 565-566, 560 N.W.2d 348 (1996).
Because the PSC's interpretation of subsection 6a(1) is reasonable and consistent with the legislative intent behind the statute of ensuring notice and hearing before the implementation of any increase in customer costs of service or rates, we defer to the PSC's determination. At most, the Attorney General has established only that there exists another plausible interpretation of the statute. Merely establishing that another interpretation is plausible is not sufficient to meet the burden of establishing by clear and convincing evidence that the PSC's interpretation of the statute is unlawful or unreasonable. See, e.g., GTE North Inc. v. Public Service Comm., 215 Mich.App. 137, 165-166, 544 N.W.2d 678 (1996).
Affirmed.
NOTES
[1] The statutory language quoted by the PSC is from subsection 6a(1) before amendment by 1992 P.A. 37.