ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

Docket No. 205845. Submitted February 10, 1999, at Lansing. Decided April 23, 1999, at 9:00 A.M. Leave to appeal sought.

Michigan Gas Utilities (MGU) filed a gas cost recovery (GCR) plan and five-year forecast with the Michigan Public Service Commission (PSC), seeking, in part, to modify MGU's system of refunds and surcharges by replacing its historical method of refunds and surcharges with a method that allows the utility to roll a projected, prior period underrecovery into a GCR factor for a future period. The Attorney General, the Association of Businesses Advocating Tariff Equity, and the Residential Ratepayer Consortium intervened in the proceedings. The staff of the PSC's gas division appeared as a party. The PSC allowed the change, but rejected MGU's proposal to adopt a standardized method for reopening a GCR plan case proceeding for the narrow purpose of adjusting the GCR factor in response to spot market volatility. The Attorney General appealed.

The Court of Appeals *held*:

MCL 460.6h; MSA 22.13(6h) permits the PSC to allow a GCR factor that includes an allowance for an estimated underrecovery relating to a prior GCR period.

1. Whether a projected underrecovery included in MGU's future GCR factor is reasonable and prudent will be subject to review initially in the GCR plan case proceeding and subsequently in the annual reconciliation proceedings. Any concern that reconciliation proceedings will be rendered obsolete and that MGU will have free rein to roll projected underrecovery into the GCR plan case proceeding without some level of scrutiny by the PSC is unfounded.

2. The PSC's decision was reasonable because there was evidence indicating that allowing MGU to recover for a projected underrecovery without waiting until completion of the reconciliation proceeding would be expeditious and save consumers a substantial amount of accrued interest.

3. The PSC is authorized by § 6h to establish how a refund for an overrecovery is to be distributed or a surcharge for an underrecovery is to be collected. The procedure authorized by the PSC is lawful and reasonable.

Affirmed.

MARKMAN, J., concurring, wrote separately to state that although MCL 460.6h; MSA 22.13(6h) is susceptible to alternative interpretations and the dissent's interpretation is reasonable, the PSC's interpretation is also reasonable and, under the narrow standard of review, the PSC's decision should be affirmed. Nothing in the language of the statute can be interpreted to preclude a utility from rolling in a forecasted, prior underrecovery before the time that the actual amount of the underrecovery is determined at a reconciliation proceeding. Where, as here, the statutory language lends itself to more than one plausible interpretation, the judiciary should be most prepared to defer to the administrative expertise of the PSC.

JANSEN, P.J., dissenting, stated that the PSC's order constitutes an error of law because the commission improperly interpreted MCL 460.6h; MSA 22.13(6h). The statute does not allow MGU to incorporate projected, prior period underrecoveries. The statute authorizes recovery of actual underrecoveries once they are determined in a GCR reconciliation case. The PSC's order permits the gas utilities to introduce any projected, year-end underrecovery for a prior year to be a part of the calculation of gas cost recovery factors. Because the statute does not permit this, the PSC's order should be reversed.

1. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — GAS COST RECOVERY FACTORS.

The Public Service Commission may allow a utility to use a gas cost recovery factor that includes an allowance for a utility's estimated underrecovery relating to a prior gas cost recovery period (MCL 460.6h; MSA 22.13[6h]).

2. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — APPEAL.

All rates, fares, practices, and services prescribed by the Public Service Commission are presumed, prima facie, to be lawful and reasonable; an appellant must show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable; courts should not substitute their judgment for that

of the commission with regard to a factual issue and must defer to the commission's expertise (MCL 462.25; MSA 22.44).

3. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — REFUND AND SURCHARGE PROCEDURES.

Economic benefits, increased efficiency, and accuracy are relevant factors to be considered by the Public Service Commission with regard to refund and surcharge procedures proposed by a utility.

4. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — REFUND AND SURCHARGE PROCEDURES.

The Public Service Commission is granted broad discretion to establish how a refund for an overrecovery is to be distributed or a surcharge for an underrecovery is to be collected; the commission must utilize procedures that the commission determines to be reasonable for such purposes (MCL 460.6h[13], [14]; MSA 22.13[6h][13], [14]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *J. Peter Lark*, Assistant in Charge Special Litigation Division, and *Donald E. Erickson*, Assistant Attorney General, for the Attorney General.

*Don L. Keskey* and *Judith I. Blinn*, Assistant Attorneys General, for the Public Service Commission.

*Honigman Miller Schwartz and Cohn* (by *Daniel J. Demlow, Richard J. Aaron*, and *Daniel L. Stanley*), for Michigan Gas Utilities.

Before: JANSEN, P.J., and SAWYER and MARKMAN, JJ.

SAWYER, J. The Attorney General appeals from an order of the Michigan Public Service Commission that authorized Michigan Gas Utilities (MGU) to modify its system of refunds and surcharges. We affirm.

MGU sought to replace its historical method of refunds and surcharges with a method that allows the utility to roll a projected, prior period underrecovery

into a gas cost recovery (GCR) factor for a future period. The PSC allowed this, though it rejected MGU's proposal to adopt a standardized method for reopening a GCR plan case proceeding for the narrow purpose of adjusting the GCR factor in response to spot market volatility.

Pursuant to MCL 460.6h(2); MSA 22.13(6h)(2), a mechanism is created that allows the PSC to include a "gas cost recovery clause" in the rate or rate schedule of a gas utility. Such a clause permits the monthly adjustment of rates for gas in order to allow the utility to recover the booked costs of gas sold by the utility, as long as the utility incurs such costs under reasonable and prudent policies and practices. To implement the gas recovery clause, utilities are required to file annual GCR plan cases describing the expected sources and volumes of the utilities' gas supply, the changes in the cost of gas anticipated for the following year, and a five-year forecast of gas requirements, sources of supply, and projection of costs. The PSC conducts a review as a contested case proceeding to evaluate the reasonableness and prudence of the plan and, in a final order, either approves, rejects, or amends the annual GCR plan and five-year forecast.

The statute further requires the PSC to commence a reconciliation proceeding not less than once a year and not later than three months after the end of each twelve-month period covered by a gas utility GCR plan, during which proceeding the PSC reconciles the revenues received against the allowances for costs. The PSC must require a gas utility to refund to customers or credit to their bills any net overrecovery pursuant to the GCR clause, and must authorize the utility to recover for any underrecovery if the utility demon-

strates by clear and convincing evidence that the excess expenses were beyond the ability of the utility to control through reasonable and prudent actions.

On September 30, 1996, MGU filed its 1997 GCR plan and five-year forecast, along with testimony and exhibits, requesting that the PSC, among other things: (1) approve the GCR plan and find that MGU's decisions underlying the plan were reasonable and prudent, (2) authorize MGU to establish its requested GCR factor of $3.41 a Mcf for each of the twelve months of 1997, (3) find that the decisions underlying MGU's five-year forecast were reasonable and prudent, and (4) approve MGU's proposal to include a projected underrecovery in any future calculations of the maximum GCR factor.

Intervenors in the proceedings included the Attorney General, the Association of Businesses Advocating Tariff Equity (ABATE), and the Residential Ratepayer Consortium (RRC). The staff of the PSC's gas division appeared as a party.

The parties entered into a partial settlement agreement, which was approved by the PSC, leaving two issues to be submitted for a contested case decision. The settlement agreement phrased the remaining issues as follows:

> a. whether or not a gas utility may include an allowance for estimated prior GCR under recoveries in any GCR factor which it proposes pursuant to MCL 460.6h; MSA 22.13(6h), and
>
> b. whether or not the [PSC] can limit reopening proceedings under MCL 460.6h(10); MSA 22.13(6h)(10) by adopting guidelines such as those proposed in Exhibit A-15 (JTC-6).

In submitting its materials, MGU projected a 1996 GCR underrecovery of $8,580,700. At issue was

whether it could include that figure in its 1997 GCR (which proposed a recovery for gas sold in 1997 of $76,057,584). MGU also requested that the PSC adopt its method for estimating underrecoveries in future GCR factors and as a basis for reopening future plan case proceedings to adjust MGU's GCR factors when actual market prices for gas escalate beyond what the utility projects in its GCR plan case. The PSC's staff opposed MGU's proposals. Staff witness Robert G. Ozar opined that § 6h does not allow MGU to incorporate forecasted, prior period underrecoveries into its calculation of future GCR factors. Rather, Ozar testified, the PSC could authorize recovery of actual underrecoveries following the reconciliation proceeding.

Ultimately, the PSC approved MGU's roll-in method for projected, prior period underrecoveries. However, it did reject MGU's proposed standardized method for reopening GCR plan case proceedings for the narrow purpose of adjusting the GCR factor to reflect spot market volatility. The Attorney General then filed this appeal.

The primary issue for our consideration is whether the statute permits the PSC to allow a GCR factor that includes an allowance for an estimated underrecovery relating to a prior GCR period. We agree with the PSC that it does.

The standard of review was summarized in *Ford Motor Co v Public Service Comm*, 221 Mich App 370, 373; 562 NW2d 224 (1997):

> The standard of review for PSC orders is narrow and well established. MCL 462.25; MSA 22.44 provides that all rates, fares, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Public Service Comm*, 389 Mich 624;

209 NW2d 210 (1973); *Attorney General v Public Service Comm*, 206 Mich App 290, 294; 520 NW2d 636 (1994). An appellant must show by "clear and satisfactory evidence" that the order of the PSC complained of is "unlawful or unreasonable." MCL 462.26(8); MSA 22.45(8); *Michigan Consolidated Gas Co, supra* at 639; *CMS Energy Corp v Attorney General*, 190 Mich App 220, 228; 475 NW2d 451 (1991); *Attorney General, supra* at 294. Courts should not substitute their judgment for that of the administrative agency on a factual issue and must defer to the PSC's administrative expertise. 206 Mich App 294; 190 Mich App 228.

In *Attorney General v Public Service Comm*, 215 Mich App 356; 546 NW2d 266 (1996) *(Attorney General)*, we held that the PSC's decision to change the method by which a utility credited or surcharged customers for the differences between the actual cost of gas and its projected cost as embodied in GCR factors, so as to authorize rolling over overrecoveries and underrecoveries into future GCR factors, was lawful and reasonable. Building on *Attorney General*, the PSC in this case approved MGU's roll-in method for *projected*, prior period underrecoveries. After reviewing the parties' arguments and this Court's decision in *Attorney General*, the PSC concluded:

> Because the Commission has broad discretion to fashion refund and surcharge procedures pursuant to MCL 460.6h(13) and (14); MSA 22.13[6h](13) and (14), the Commission finds that MGU may be authorized to rely upon a forecast of a prior period underrecovery to roll a prior period GCR underrecovery into a future period GCR factor. Of course, the reasonableness of any forecasted underrecovery included in MGU's future GCR factor is a matter that is subject to the determination of the Commission in establishing the utility's GCR factor. Moreover, the amount of the forecasted underrecovery is also subject to review and revision in the utility's annual GCR reconciliation proceeding.

The Attorney General argues that the PSC's decision was unlawful and unreasonable because it is inconsistent with the language and purposes of § 6h. In particular, the Attorney General argues that the PSC's interpretation of subsection 6h(14) is inconsistent with subsection 6h(3), which specifically includes forward-looking language (e.g., "expected," "anticipated," and "a future 12-month period") yet is devoid of language regarding estimated, prior period underrecoveries, and with subsection 6h(12), which requires a GCR reconciliation proceeding not less than once a year. We disagree.

Whether a projected underrecovery included in MGU's future GCR factor is reasonable and prudent will be subject to review initially in the GCR plan case proceeding and subsequently in the annual reconciliation proceedings. Any concern that reconciliation proceedings will be rendered obsolete and that the utility will have free rein to roll a projected underrecovery into the GCR plan case proceeding without some level of scrutiny by the PSC is unfounded. That is, a reconciliation proceeding will still be necessary to determine if the projected underrecovery was accurate and to make any adjustment necessary.[1]

Moreover, the PSC's decision was reasonable where there was evidence presented that allowing the utility to recover for a projected underrecovery without waiting until completion of the reconciliation proceeding would be expeditious and save consumers a substantial amount of accrued interest. This Court has recognized that factors such as economic bene-

---

[1] For that matter, we note that the initial GCR factor itself is just an estimate. The method at issue here merely refines that initial estimate before the final determination can be made.

fits, increased efficiency, and accuracy are relevant in assessing the overall reasonableness of a proposed procedure. *Attorney General, supra* at 369-370.

Furthermore, we note that subsections 6h(13) and (14) of the statute grant broad discretion to the PSC in establishing how a refund for an overrecovery is to be distributed or a surcharge for an underrecovery is to be collected. In both cases, subsections 6h(13) and (14) direct that it shall be by "utilizing procedures that the commission determines to be reasonable." The PSC determined the procedure employed here to be reasonable. Therefore, it is explicitly authorized by statute.[2]

We are not persuaded that the procedure authorized by the PSC is unreasonable. Because we are not persuaded that the PSC's decision was either unlawful or unreasonable, it would not be appropriate for us to set it aside.

The Attorney General's next argument is that the PSC erred in concluding that it could approve a contingent GCR factor that is triggered by a future event to address spot market price volatility. However, the PSC did not approve such a proposal in the case at bar. It merely noted in dicta that, in a proper case, it could do so. Because the PSC did not do so in this case, the issue is not ripe for review by us. We decline to offer any opinion on whether the PSC is correct in its state-

---

[2] The dissent's argument that the statute only authorizes recovery of actual underrecoveries misses the point. Ultimately, the utility will only recover the actual underrecovery as determined in a gas cost recovery reconciliation case. At issue is whether the *procedure* employed in reaching that point is reasonable. If the PSC determines that it is a reasonable procedure to utilize two stages, first immediately recovering the estimated underrecovery and later adjusting for the actual underrecovery, the PSC is authorized by statute to do so.

ment that it could approve such a contingent GCR factor in the appropriate case. That issue may be reviewed by this Court when and if an aggrieved party to a PSC decision on that point asks us to do so.

Affirmed. Appellees, the PSC, MGU, and ABATE may tax costs.

MARKMAN, J. (*concurring*). I concur in Judge SAWYER's opinion to affirm, but write separately in order to address the specific concern raised by the dissent that MCL 460.6h; MSA 22.13(6h) does not authorize a utility to include a forecasted, prior period underrecovery in its proposed gas cost recovery factor for the following year. While I believe that this statute is susceptible to alternative interpretations, and that the dissent's interpretation is a reasonable one, I also believe that the Michigan Public Service Commission's interpretation is a reasonable one. Given our narrow standard of review, therefore, I believe that the PSC's decision should be affirmed.

Pursuant to subsection 6h(3) of the act, a utility seeking to implement a gas cost recovery clause must file an annual gas cost recovery plan describing "the expected sources and volumes of its gas supply and changes in the cost of gas anticipated over a future 12-month period . . . and requesting for each of those 12 months a specific gas cost recovery factor." Adopting the hearing referee's interpretation of subsection 6h(3), the dissent concludes that the forward-looking language—i.e., "expected" and "anticipated"—precludes a utility from including a forecasted underrecovery from a prior period.

However, utility ratemaking in general and setting a gas cost recovery factor in particular inherently

involve an element of prediction of the future based, in part, on what has occurred in the past. For example, a utility's future rates inevitably include the recoupment of certain costs already incurred. Indeed, subsection 6h(1)(c) defines "[g]as cost recovery factor" to mean "that element of the rates to be charged for gas service to reflect gas costs *incurred* by a gas utility and made pursuant to a gas cost recovery clause incorporated in the rates or rate schedules of a gas utility." (Emphasis supplied.) The regulatory scheme embodied in subsection 6h(3) recognizes that, to the extent a utility's proposed gas cost recovery plan includes "changes in the cost of gas anticipated over a future 12-month period," the Legislature did not intend to preclude a utility from seeking recoupment of costs already incurred. Hence, contrary to the dissent's reading of § 6h, in my judgment, nothing in the statutory language can be interpreted to preclude a utility from rolling in a forecasted, prior period underrecovery before the time that the actual amount of the underrecovery is determined at a reconciliation proceeding.

Moreover, allowing a utility to roll a forecasted, prior period underrecovery into a future gas cost recovery factor will not render reconciliation proceedings obsolete. As correctly noted by the lead opinion, the PSC has exercised its administrative authority under the statute by authorizing a two-stage procedure for recoupment of prior period underrecoveries, rather than forcing the utility to wait until after the reconciliation proceeding is completed. The PSC recognized that this procedure would ameliorate the effect of regulatory lag, thereby reducing interest costs passed on to ratepayers. The reasonableness

and prudence of a utility's forecast remains subject to scrutiny by the PSC at both the gas supply and cost reviews, pursuant to subsections 6h(2) through (9), and the eventual reconciliation proceeding, pursuant to subsections 6h(12) through (15).[1] Indeed, I find it noteworthy that, in a reconciliation proceeding pursuant to subsection 6h(12), the PSC is directed to "consider any issue regarding the reasonableness and prudence of expenses for which customers were charged if the issue could not have been considered adequately at a previously conducted gas supply and cost review." In other words, the difference, if any, between a forecasted, prior period underrecovery and the actual amount of that underrecovery is subject to review by the PSC in the reconciliation proceeding.

Finally, I find the dissent's statement that § 6h is "hardly a model of clarity"—an assertion, by the way, with which I agree—to be at odds with its legal conclusion that the Attorney General has satisfied the statutory mandate to prove "by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable." MCL 462.26(8); MSA 22.45(8). It is in precisely this circumstance, i.e., where the statutory language lends itself to more than one plausible interpretation, that the judiciary should be most prepared to defer to the administrative expertise of the PSC. See *Attorney General v Public Service Comm*, 227 Mich App 148, 155; 575 NW2d 302 (1997).

---

[1] The instant construction of the statute is also consistent with subsection 6h(10), which allows the PSC to reopen a gas supply and cost review proceeding during the twelve-month period covered by the plan if a utility files a *revised* gas cost recovery plan.

JANSEN, P.J. (*dissenting*). I respectfully dissent. I would find that the Public Service Commission's order constitutes an error of law because the commission improperly interpreted MCL 460.6h; MSA 22.13(6h).

MCL 460.6h(14); MSA 22.13(6h)(14) provides:

> In its order in a gas cost reconciliation, the commission shall authorize a gas utility to recover from customers any net amount by which the amount determined to have been recovered over the period covered was less than the amount determined to have been actually expensed by the utility for gas sold, and to have been incurred through reasonable and prudent actions not precluded by the commission order in the gas supply and cost review. For excess costs incurred through actions contrary to the commission's gas supply and cost review order, the commission shall authorize a utility to recover costs incurred for gas sold in the 12-month period in excess of the amount recovered over the period only if the utility demonstrates by clear and convincing evidence that the excess expenses were beyond the ability of the utility to control through reasonable and prudent actions. For excess costs incurred through actions consistent with [the] commission's gas supply and cost review order, the commission shall authorize a utility to recover costs incurred for gas sold in the 12-month period in excess of the amount recovered over the period only if the utility demonstrates that the excess expenses were reasonable and prudent.
>
> Such amounts in excess of the amounts actually recovered by the utility for gas sold shall be apportioned among and charged to the customers of the utility utilizing procedures that the commission determines to be reasonable. The commission may adopt different procedures with respect to customers served under the various rate schedules of the utility and may, in appropriate circumstances, order charges to be made in proportion to the amounts which would have been paid by such customers if the amounts in excess of the amounts actually recovered by the

utility for gas sold had been included in the gas cost recovery factors with respect to such customers during the period covered. Charges for such excess amounts shall be spread over a period that the commission determines to be appropriate.

Although hardly a model of clarity, the statute does not allow Michigan Gas Utilities to incorporate *projected*, prior period underrecoveries. Rather, the statute authorizes recovery of *actual* underrecoveries once they are determined in a gas cost recovery reconciliation case. This was noted by the hearing referee, who stated in his proposal for decision, correctly I believe, that the language of MCL 460.6h(3); MSA 22.13(6h)(3) is "forward looking" (future costs) and is devoid of language that included prior period underrecoveries. The hearing referee also believed that permitting the inclusion of prior period underrecoveries in the gas cost recovery plan would lead to duplicative remedies because there is nothing in the gas utility's plan to prevent the utility from filing in the gas cost recovery plan prior period underrecoveries and also filing for the same underrecoveries in a gas cost recovery reconciliation case.

Further, the PSC's interpretation of MCL 460.6h; MSA 22.13(6h) goes far beyond this Court's decision in *Attorney General v Public Service Comm*, 215 Mich App 356; 546 NW2d 266 (1996), which held only that the PSC was not prohibited, as a matter of law, from including the costs associated with the implementation of a hedging program of natural gas futures to be among the booked costs of the natural gas for the purpose of determining the appropriate gas cost recovery factor used to determine the final rate at which the gas is sold. There is a vast difference

between rolling an actual underrecovery determined in a gas cost recovery reconciliation order into subsequently billed gas cost recovery factors and including projected, prior period underrecoveries in gas cost recovery factors proposed for a future twelve-month period.

The PSC's order permits the gas utilities to introduce any projected, year-end underrecovery for a prior year to be a part of the calculation of gas cost recovery factors. Because MCL 460.6h; MSA 22.13(6h) does not permit this, I would find the PSC's order to be an error of law. I would reverse the PSC's order.