# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Application of CONSUMERS ENERGY
COMPANY for Approval of a Gas Cost Recovery
Plan.

ATTORNEY GENERAL,

       Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

       Appellee,

and

CONSUMERS ENERGY COMPANY,

       Petitioner-Appellee.

FOR PUBLICATION
November 17, 2015
9:00 a.m.

No.  322031
MPSC
LC No.  00-017334

---

*In re* Application of MCIHIGAN GAS UTILITIES
CORPORATION for Approval of a Gas Cost
Recovery Plan.

ATTORNEY GENERAL,

       Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

       Appellee,

and

MICHIGAN GAS UTILITIES CORP,

       Petitioner-Appellee.

No.  322571
MPSC
LC No.  00-017331

-1-

*In re* Application of DTE GAS COMPANY for Approval of Gas Cost Recovery Plan.

ATTORNEY GENERAL,

      Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

      Appellee,

and

DTE GAS COMPANY, f/k/a MICHIGAN CONSOLIDATED GAS COMPANY,

      Petitioner-Appellee.

No. 324321
MPSC
LC No. 00-017332

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

In these consolidated appeals involving the setting of rates for gas utilities, the Attorney General appeals by right three orders issued by the Michigan Public Service Commission in three separate contested cases. In Docket No. 322031, the Attorney General appeals the Commission's order granting the application by petitioner, Consumers Energy Company, for a temporary order approving a gas cost recovery plan (recovery plan) and gas cost recovery factors (recovery factors) for the 12-month period ending in March 2015. In Docket No. 322571, the Attorney General appeals the Commission's order granting the application by petitioner, Michigan Gas Utilities Corporation (Michigan Gas), for a temporary order approving a recovery plan and recovery factors for the same 12-month period. And, in Docket No. 324321, the Attorney General appeals the Commission's order denying its request for an order compelling petitioner, DTE Gas Company (DTE), to cease self-implementing the recovery factors requested in its amended application. Because we conclude that the Attorney General failed to show by clear and satisfactory evidence that the orders were unlawful or unreasonable, we affirm.

## I. BASIC FACTS

## 1. CONSUMERS ENERGY

In December 2013, Consumers Energy applied to the Commission for approval of its recovery plan and the authorization of its proposed recovery factors for the 12-month period ending in March 2015. It sought approval of a base recovery factor of $4.3962 per thousand cubic feet with authority to adjust the recovery factor on the basis of a contingency mechanism.

The Administrative Law Judge held a prehearing in February 2014, and granted the petitions for intervention by the Attorney General and Residential Ratepayers Consortium (Ratepayers Consortium). The Commission's staff also participated in the case. Later that same month, Consumers Energy filed an amended application for approval of a base recovery factor of $5.5750 per thousand cubic feet. Consumers Energy asserted that it needed the higher recovery factor as a result of increases in the demand for natural gas, which were caused in part by colder-than-normal temperatures in Michigan and other parts of the United States.

In March 2014, Consumers Energy and the Commission's staff jointly moved for a temporary order approving Consumers Energy's requested recovery factor. They noted that Consumers Energy calculated that its underrecovery for the period covered by the 2013-2014 plan would be approximately $98 million, and, if the recovery factor of $4.3962 became effective for the period covered by the 2014-2015 plan, Consumers Energy's cumulative underrecovery would be approximately $185 million. A delay in the implementation of the increased recovery factor would, they maintained, "economically burden Consumers Energy's customers by moving additional costs . . . until later in the 2014-2015 [recovery] year."

In response, the Attorney General argued that the Commission did not have the authority to approve the increased recovery factor on a temporary basis, and should not approve Consumers Energy's request to roll the projected underrecovery from the period covered by the 2013-2014 plan into the recovery plan for the 2014-2015 plan year. Ratepayers Consortium joined the Attorney General's opposition to the motion.

In May 2014, the Commission granted Consumers Energy's request and issued a temporary order approving an increased recovery factor. The Commission stated that the record supported a finding that natural gas prices had risen significantly since Consumers Energy filed its initial application and that to leave the recovery factor at the rate proposed in the initial application would result in a significant under-recovery for Consumers Energy. Because it "is in the public interest to match market prices to the [recovery] factor as closely as possible during a [] plan period such that market fluctuations are generally reflected in the gas price charged to [] customers," the Commission authorized Consumers Energy to raise its recovery factor to $5.575 per thousand cubic feet starting the first full billing month following the order and continuing until entry of a final order. The Commission, however, declined to address the Attorney General's argument that it was improper to roll-in an under-recovery from one plan to the next.

## 2. MICHIGAN GAS

Michigan Gas also filed an application in December 2013 for approval of its recovery plan and factors for the 12-month period ending in March 2015. It requested approval of a base recovery factor of $4.7776 per thousand cubic feet with authority to adjust on the basis of a contingency mechanism. The Attorney General and Ratepayers Consortium also intervened in this case.

In March 2014, Michigan Gas amended its application to request a proposed recovery factor of $5.9122 per thousand cubic feet. Michigan Gas argued that the increased recovery factor was necessary because the market price for natural gas had significantly increased as a result of unanticipated and prolonged cold weather. It noted that the increased price of natural gas had caused it to have an under-recovery of $6.6 million for the 2013-2014 year. It further moved for entry of a temporary order approving the higher recovery factor.

In June 2014, the Commission issued an order approving Michigan Gas' request. The Commission recognized that Michigan Gas was currently self-implementing the recovery factors stated in the original application. Because the recovery factors proposed in the initial application would likely result in a significant underrecovery, the Commission authorized Michigan Gas to raise its base recovery factor to $5.7471 per thousand cubic feet beginning with the first full billing month following the issuance of the order and continuing until entry of a final order. The Commission again declined to address the argument that it could not properly roll-in an underrecovery from one plan period to the next.

## 3. DTE

In December 2013, DTE applied for approval of its recovery plan for the period ending in March 2015. It sought approval for a base recovery factor of $4.42 per thousand cubic feet. And, in February 2014, it amended its application to request a base recovery factor of $4.47 per thousand cubic feet. The Attorney General and Ratepayers Consortium again intervened.

DTE filed a second amended application in April 2014. In this application, it requested a base recovery factor of $4.97 per thousand cubic feet. As with the other utilities, DTE argued that the colder than normal temperatures had significantly affected the market price of natural gas and it anticipated that it would have an underrecovery for the 2013-2014 plan year. DTE stated that it intended to self-implement the proposed recovery factor under MCL 460.6h(9).

In July 2014, Ratepayers Consortium asked the Commission to order DTE to cease self-implementing the increased recovery factor. It argued that MCL 460.6h(9) did not authorize DTE to self-implement a recovery factor that was filed less than three months before the commencement of the plan year. The administrative law judge held a hearing on the motion later that same month. The judge agreed with Ratepayer Consortium's interpretation of MCL 460.6h(9), but stated that it did not have the authority to issue the requested order.

The Attorney General and the Ratepayers Consortium sought leave from the Commission to appeal the administrative law judge's decision. The Commission granted the appeal, but declined to issue an order compelling DTE to cease self-implementing the recovery factor. The Commission explained that DTE had the authority "to amend a prior estimated [recovery] factor

-4-

and self-implement the resulting increase." The Commission noted that MCL 460.6h(3) required a utility to file a complete recovery plan three months before the commencement of the period covered by the plan, but stated that nothing in the statute required that the plan "remain unaltered throughout the course of the [recovery] plan review process." The Commission further stated that MCL 460.6h(9) did not prohibit a utility from amending its recovery plan, and in fact anticipated that such amendments would be filed. Finally, the Commission determined that DTE also did not have to seek a temporary order under MCL 460.6h(8), because MCL 460.6h(9) authorized DTE to act as it did.

The Attorney General then appealed the Commission's decisions in each case to this Court. This Court ordered the consolidation of the appeals in August 2015.[1]

## II. THE TEMPORARY ORDERS

## A. STANDARDS OF REVIEW

The Attorney General argues that the Commission erred when it determined that it could approve an amended recovery plan or recovery factor through a temporary order. He maintains that a utility may file a revised recovery plan during the period covered by the plan, but, if it does so, it must follow the procedures applicable to a request to amend the recovery plan before implementing the revised recovery plan. He similarly contends that underrecoveries from a previous plan year must be handled in a reconciliation proceeding and cannot be rolled into a current recovery plan.

This Court reviews the Commission's orders to determine whether the appellant has shown "by clear and satisfactory evidence" that the Commission's order was "unlawful or unreasonable." MCL 462.26(8); *Great Lakes Steel Div of Nat'l Steel Corp v Michigan Public Service Comm'n*, 416 Mich 166, 182-183; 330 NW2d 380 (1982). An order is unlawful if the Commission failed to follow some mandatory provision of the statute or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). This Court reviews de novo whether the Commission properly selected, interpreted, and applied the relevant statutes. *New Products Corp v Harbor Shores BHBT Land Dev, LLC*, 308 Mich App 638, 644; 866 NW2d 850 (2014).

## B. ANALYSIS

The Commission possesses only that authority which the Legislature has granted to it in clear and unmistakable language. *Mich Electric Coop Ass'n v Pub Serv Comm*, 267 Mich App 608, 616; 705 NW2d 709 (2005). Further, an administrative agency, such as the Commission, cannot expand its authority beyond that provided by statute under the guise of its rule making authority. *York v Detroit (After Remand)*, 438 Mich 744, 767; 475 NW2d 346 (1991). With MCL 460.6h(2), the Legislature authorized the Commission to incorporate a gas cost recovery

---

[1] See *In re Application of Consumers Energy for Approval of Gas Cost*, unpublished order of the Court of Appeals, entered August 26, 2015 (Docket Nos. 322031; 322571; 324321).

clause in the rates or rate schedules of a gas utility. It then provided specific procedures for implementing a gas cost recovery clause.

A gas utility must first file a "complete gas cost recovery plan" no later than three months before the beginning of the plan year and it must request "a specific gas cost recovery factor" for each month in the plan year. MCL 460.6h(3). A recovery factor is "that element of the rates to be charged for gas service to reflect gas costs incurred by a gas utility and made pursuant to a gas cost recovery clause incorporated in the rates or rate schedules of a gas utility." MCL 460.6h(1)(c). The Commission thereafter must conduct "a proceeding to be known as a gas supply and cost review, for the purpose of evaluating the reasonableness and prudence of the plan, and establishing the gas cost recovery factors to implement" the gas cost recovery clause stated in the utility's plan. MCL 460.6h(5). This review is to be conducted as a contested case under the administrative procedures act. *Id.*; see MCL 24.201 *et seq.*

After the conclusion of the contested proceeding, the Commission must enter a final order in which it approves, disapproves, or amends the recovery plan. MCL 460.6h(6). In evaluating the utility's recovery plan, the Commission may consider a variety of factors:

> [T]he commission shall consider the volume, cost, and reliability of the major alternative gas supplies available to the utility; the cost of alternative fuels available to some or all of the utility's customers; the availability of gas in storage; the ability of the utility to reduce or to eliminate any sales to out-of-state customers; whether the utility has taken all appropriate legal and regulatory actions to minimize the cost of purchased gas; and other relevant factors. [*Id.*]

The Legislature also provided that the Commission must specifically "approve, reject, or amend the 12 monthly gas cost recovery factors requested by the utility in its gas cost recovery plan." *Id.* When these provisions are read together, it is plain that the Legislature gave the Commission broad authority both to evaluate the reasonableness of a proposed plan and also to amend the plan as warranted by the underlying circumstances.

## 1. TEMPORARY ORDERS

On appeal, the Attorney General essentially argues that the Commission's authority to amend a utility's proposed recovery plan or recovery factor can only be exercised in a final order or in a proceeding to revise a plan after a final order under MCL 460.6h(10). Although the Legislature apparently contemplated the possibility that a utility might file a "revised gas cost recovery plan" after the Commission entered a final order in the contested case, it did not require the utility to wait until the Commission enters a final order before submitting a revised plan or proposing changes to a plan that is under review; it only required the utility to file the revised plan "[n]ot less than 3 months before the beginning of the third quarter of the 12-month period" covered by the plan. MCL 460.6h(10). In addition, the reference to a revised plan does not require the utility to begin anew; a revised plan can be a previously submitted plan with specific proposed revisions. Therefore, a utility can propose changes or revisions to an application before the Commission approves, disapproves, or amends the plan in a final order. As long as the initial plan was "a complete gas cost recovery plan" when the utility first applied for approval, the plan

-6-

is properly before the Commission for review even though the utility has since requested revisions or amendments to the plan. MCL 460.6h(3).

Under MCL 460.6h(8), the Legislature authorized the Commission to "make a finding and enter a temporary order granting approval or partial approval of a gas cost recovery plan in a gas supply and cost recovery review" on its own motion or the motion of any party, if it affords the parties a reasonable opportunity for a full and complete hearing. By specifically authorizing a "temporary order granting approval or partial approval" of a recovery plan in a "gas supply and cost review", *id.*, the Legislature empowered the Commission to allow a utility to implement a recovery plan, in whole or in part, at any point in the contested proceeding; it may enter a temporary order before entry of a final order and it may enter a temporary order after a proposed revision to the plan.

The Attorney General makes much of the fact that, in MCL 460.6h(8), the Legislature did not authorize the Commission to enter a temporary order approving or partially approving an "amended" recovery plan, but instead only authorized the Commission to approve or partially approve a recovery plan; more specifically, the Attorney General maintains that the reference to a "gas cost recovery plan in a gas supply and cost recovery review" must be understood to limit the Commission's authority to approving the recovery factors originally proposed in the recovery plan. A common sense reading of the statutory language demonstrates that the Legislature intended to identify the plan under review as the one that the Commission may approve or partially approve on a temporary basis. That is, the reference merely clarifies that the Commission's authority to issue temporary orders extends only to cases involving plans that are under review (as opposed to cases subject to a final order). It does not follow, however, that the Legislature also intended to limit the Commission's authority to approve a plan on a temporary basis to include only those provisions that were stated in the original plan; if it had intended to do so, it would have expressly referred to the original recovery factors. See *Bradley v Saranac Community Sch Bd of Ed*, 455 Mich 285, 298; 565 NW2d 650 (1997). This is also consistent with the Commission's authority to amend the plan in its final order. See MCL 460.6h(6).[2] Moreover, when MCL 460.6h(8) is read in conjunction with MCL 460.6h(9), it is beyond reasonable dispute that the Legislature contemplated that the Commission would routinely use temporary orders to authorize a utility to collect a recovery factor before the entry of a final order in the gas supply and cost recovery review and that it had the power to authorize revised recovery factors in the temporary orders to the same extent that it could ultimately choose to amend the recovery factors in its final order.

---

[2] Contrary to the Attorney General's argument on appeal, the Commission does not "amend" a plan when it issues a temporary order under MCL 460.6h(8), even when it approves or partially approves a proposed recovery factor, which the utility has revised. The temporary order merely permits the utility to include the proposed recovery factor in its rates, as revised, until the Commission issues its final order; it is the final order that actually implements any amendments to the original plan.

MCL 460.6h(9) provides that, for any period covered by a temporary order, a gas utility may "incorporate" the recovery factors permitted by the order into "its rates." In the event that the Commission has not timely entered a final or temporary order permitting the utility to implement its plan, the Legislature determined that a utility should be allowed to self-implement its plan:

> If the commission has not made a final or temporary order within 3 months of the submission of a complete gas cost recovery plan, or by the beginning of the period covered in the plan, whichever comes later, or if a temporary order has expired without being extended or replaced, then pending an order which determines the gas cost recovery factors, a gas utility may each month adjust its rates to incorporate all or a part of the gas cost recovery factors requested in its plan.

Of course, "any amounts collected" under a self-implemented plan, before the Commission makes its final order, are subject to "prompt refund with interest," if the Commission later determines that the recovery factors were not reasonable and prudent. *Id.*

The Legislature plainly recognized that a gas supply and cost review might proceed into the period covered by the plan under review. To address that issue, the Legislature first empowered the Commission to issue temporary orders implementing the proposed plan in whole or in part. MCL 460.6h(8). It then provided that, in the event that the Commission fails to issue a temporary order for the relevant period, the utility may include its proposed recovery factors in its rates. Notably, the Legislature did not expressly limit the utility's authority to self-implement the recovery factors to those specifically requested in the original application, but instead referred generally to the "recovery factors requested in its plan." See MCL 460.6h(9). Because a utility can amend or revise its plan before the conclusion of the review, it follows that the utility can self-implement a revised recovery factor as being a recovery factor "requested in its plan." *Id.* The provisions for self-implementation also strongly suggest that the Legislature wanted to encourage the Commission to issue timely temporary orders governing the implementation of recovery factors during the pendency of the review, which would include the authority to issue temporary orders governing a utility's plan as revised or amended.

Finally, nothing within the statutory provisions can be read to preclude the Commission from considering whether the utility has incurred an underrecovery or will incur an underrecovery when determining the appropriate recovery factors. The Commission has broad authority to set rates, *Attorney General v Pub Serv Comm*, 231 Mich App 76, 79; 585 NW2d 310 (1998), and is not required to use any particular method when setting rates, *Attorney General v Pub Serv Comm*, 189 Mich App 138, 147-148; 472 NW2d 53 (1991) (rejecting the contention that the Commission is bound to consider any single formula or combination of formulas when setting rates, but instead may make pragmatic adjustments warranted under the circumstances). Moreover, the Legislature has specifically stated that the Commission has the authority to consider "other relevant factors" when determining whether a proposed recovery plan and recovery factors are reasonable and prudent. MCL 460.6h(6). And the fact that the Commission must conduct a "gas cost reconciliation" proceeding to reconcile the utility's revenues using the authorized recovery factors against its actual expenses does not preclude the Commission from considering the potential for over or underrecoveries during the review proceeding. MCL

460.6h(12).  The various sections of MCL 460.6h do not directly conflict and, as construed by the Commission, are a harmonious whole.  *House Speaker v State Admin Bd*, 441 Mich 547, 568-569; 495 NW2d 539 (1993).  Consequently, the Attorney General has not established that the Commission's temporary orders were unlawful or unreasonable to the extent that the orders authorized the utilities to include revised or amended recovery factors in their rates pending resolution of the review, and subject to a future reconciliation proceeding.

## 2.  ROLL-IN SYSTEM

Before it developed its roll-in system, the Commission used a system "under which it refunded or surcharged customers on the basis of their actual historical consumption."  *Attorney General v Pub Serv Comm*, 215 Mich App 356, 361; 546 NW2d 266 (1996).  Subsequently, the Commission approved the use of the roll-in method for collecting projected under-recoveries from prior plan periods.  *Id*. at 361-363.  And this Court has recognized that the Commission's roll-in method is a lawful alternative to the prior practice:

> The [Commission's] decision is not unlawful because MCL 460.6h(13) and (14) . . . give the [Commission] discretion in fashioning refund and surcharge procedures.  These provisions authorize, but do not require, the historical system that distinguished between classes of ratepayers.  For example, subsection 13 provides that the [Commission] "may, in appropriate circumstances, order refunds or credits in proportion to the excess amounts actually collected from each such customer during the period covered."  This language clearly gives the [Commission] power to order a refund procedure that operates in the manner of the historical refund procedure, but, just as clearly, does not require the [Commission] to do so.  [*Id*. at 369.]

In *Attorney General v Pub Serv Comm*, 235 Mich App 308, 315; 597 NW2d 264 (1999), this Court similarly rejected the Attorney General's argument that the Commission's decision to authorize use of the roll-in method was "inconsistent with the language and purposes of § 6h."  *Id*. at 315.  This Court noted that the inclusion of a projected under-recovery in a recovery factor for a future plan year would still be subject to review in the later annual reconciliation proceeding.  *Id*.  This Court further concluded that the Legislature explicitly authorized the Commission to include a surcharge for an under-recovery:

> Furthermore, we note that subsections 6h(13) and (14) of the statute grant broad discretion to the [Commission] in establishing how a refund for an overrecovery is to be distributed or a surcharge for an underrecovery is to be collected.  In both cases, subsections 6h(13) and (14) direct that it shall be by "utilizing procedures that the commission determines to be reasonable."  The [Commission] determined the procedure employed here to be reasonable.  Therefore, it is explicitly authorized by statute.  [*Id*. at 316 (Opinion by Sawyer, J.).]

-9-

In Docket No. 322031, the Commission explained that its approval of a temporary factor "would not affect the review required in the reconciliation proceeding, which will control the amount of any underrecovery ultimately collected by the utility." Similarly, in Docket No. 322571, the Commission stated that neither the case plan nor the temporary order would "result in the adoption of an actual over- or underrecovery amount or a decision that that amount must be rolled-in to a particular [recovery] year, because these decisions are made in the final order of a reconciliation case." The Commission correctly recognized that its decision to authorize a recovery factor that included charges for prior underrecoveries did not impair either the consumers' or utilities' right to a full reconciliation proceeding, which would ultimately determine whether there should be a refund or surcharge to reflect actual costs.

This Court is not at liberty to ignore binding published authority. See MCR 7.215(J)(1). Therefore, we must conclude that the Commission's roll-in method is lawful.

## III. CONCLUSION

The Attorney General has not shown by clear and satisfactory evidence that the Commission's orders were unlawful or unreasonable. Accordingly, we affirm in each docket.

Affirmed.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly